STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Patrick C. CARTER, Defendant-Appellant.

Supreme Court

*No. 2006AP1811–CR. Oral argument September 12, 2008
and October 21, 2009.—Decided July 14, 2010.*

2010 WI 77

(Also reported in 785 N.W.2d 516.)

1

For the plaintiff-respondent-petitioner the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Ellen Henak,* assistant state public defender.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This case addresses the award of sentence credit for the time a criminal defendant spends in jail while awaiting trial and sentencing. The statutory provision at issue here is mandatory and the language at issue in this case amounts to one simple sentence: "A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." Wis. Stat. § 973.155(1)(a).

¶ 2. When adopted, this provision was meant to provide "a simpler, more equitable system . . . ."[1] Today's decision brings to a close the tortured saga of this case. Perhaps it will enable circuit courts to calculate and award sentence credit in a simpler and more equitable manner. We first heard oral argument in this case on September 12, 2008, in tandem with *State v. Johnson (Elandis Johnson)*, 2009 WI 57, 318 Wis. 2d 21, 767 N.W.2d 207. In that case, we reached a unanimous result, holding that the defendant in that case was not entitled to the sentence credit he sought. It appeared that the goal of simplicity might be served.

---

[1] *State v. Gavigan,* 122 Wis. 2d 389, 392, 362 N.W.2d 162, (Ct. App. 1984).

4

¶ 3. Today, we take another step forward to help clarify sentence credit in a case involving concurrent sentences.

¶ 4. This case, in which the bottom line is whether or not a criminal defendant should be awarded 302 or 305 days of sentence credit, has now been before this court in some form for over 800 days. In the lifespan of this appeal, the State has three times abandoned and reformulated its legal position. The defendant has offered more than one proposal for sentence credit.

¶ 5. In the most recent foray in this court, the parties filed a joint brief, in which the State joined the defendant, agreeing that he was entitled to 305 days of sentence credit. Neither party requested a second oral argument, and apparently neither desired it. This court nevertheless compelled the lawyers to appear, which they did. That was on September 22, 2009. Another eight months have passed. The court now issues a decision in which five opinions (totaling more than 100 typed pages) are offered with four justices joining this opinion (Chief Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley, Justice N. Patrick Crooks, and Justice Michael J. Gableman) agreeing on the interpretation of the statutes and case law and the bottom line, that is, just how many days of sentence credit should be awarded to the defendant in this case.

¶ 6. Circuit courts deal with sentence credit every day. The statute proposes a simple test. The four justices who join this opinion hope we have provided greater clarity in awarding sentence credit in a case involving concurrent sentences.

## I

¶ 7. This is a review of a published decision of the court of appeals[2] reversing the order of the Circuit Court for Milwaukee County, Mel Flanagan, Judge, denying sentence credit to defendant Patrick Carter on his sentence in Wisconsin for time spent in presentencing custody in Illinois.

¶ 8. The court of appeals disagreed with the circuit court and gave the defendant credit on his Wisconsin sentence for time spent in Illinois custody. The court of appeals remanded the matter to the circuit court to grant the defendant 324 days of sentence credit.

¶ 9. On review, we modify the decision of the court of appeals and grant the defendant a total of 305 days of credit, and as modified, affirm the decision of the court of appeals.

¶ 10. The instant case presents a question of interpreting and applying the sentence credit statute, Wis. Stat. § 973.155(1) (2007–08)[3] to a particular factual circumstance. The defendant entered a plea of guilty to a felony in Wisconsin, first degree recklessly endangering safety, in violation of Wis. Stat. § 941.30(1). The sentence for this crime was imposed to run concurrently with a sentence previously imposed in Illinois for an unrelated armed robbery. Prior to his guilty plea, conviction, and sentencing on the Wisconsin crime, the defendant was in presentence custody in Illinois from the time of his arrest in Illinois (December 13, 2003)

---

[2] *State v. Carter,* 2007 WI App 255, 306 Wis. 2d 450, 743 N.W.2d 700.

[3] All references to the Wisconsin statutes are to the 2007–08 version unless otherwise indicated.

6

until his sentencing on the Illinois charge (October 19, 2004).[4]

¶ 11. The defendant seeks credit for this presentence time, claiming this custody was in connection with the course of conduct for which sentence was imposed in Wisconsin as well as being in connection with the robbery charge in Illinois. A defendant seeking sentence credit in Wisconsin has the burden of demonstrating both "custody" and its connection with the course of conduct for which the Wisconsin sentence was imposed.[5]

¶ 12. Interpretation of a statute and application of a statute, here Wis. Stat. § 973.155(1), to undisputed facts present questions of law which this court determines independently of the circuit court and court of appeals but benefiting from the analyses of both courts.[6]

¶ 13. Because the defendant had not been surrendered to Wisconsin during the presentence custody in Illinois, the circuit court denied the defendant's motion requesting 324 days of sentence credit for his presentence custody. The circuit court awarded the defendant credit for 97 days, calculated from May 26, 2005, when he was arrested for extradition to Wisconsin, to August

[4] After sentencing in Illinois, the defendant was incarcerated in Illinois on his Illinois charges.

[5] *State v. Villalobos,* 196 Wis. 2d 141, 148, 537 N.W.2d 139 (Ct. App. 1995).

[6] *State v. Johnson (Marcus Johnson),* 2007 WI 107, ¶ 27, 304 Wis. 2d 318, 332, 735 N.W.2d 505; *State ex rel. Pharm v. Bartow,* 2007 WI 13, ¶ 13, 298 Wis. 2d 702, 713, 727 N.W.2d 1.

30, 2005, when he was sentenced on the Wisconsin charge.[7]

¶ 14. In contrast, the court of appeals held that the defendant was entitled to 324 days of sentence credit for his presentence confinement in Illinois from the date he was arrested in Illinois until the date he was sentenced on the Illinois charge; this time spent in Illinois custody was in connection with the course of conduct for which sentence was imposed in Wisconsin.

¶ 15. This court granted the State's petition for review. After hearing oral argument on September 12, 2008, we determined that the record in this case was "insufficiently developed to demonstrate whether all or some of the defendant's jail time in Illinois was 'in connection with the course of conduct for which sentence was imposed' in Wisconsin." Order of September 17, 2008. The cause was remanded to the Circuit Court for Milwaukee County "to receive the documents relating to the Illinois presentence proceedings and for a hearing to determine the ground or grounds on which the defendant was held in an Illinois jail from December 14, 2003, to November 2, 2004."

¶ 16. The circuit court for Milwaukee County, Patricia D. McMahon, Judge, received 15 exhibits into the

---

[7] The court of appeals rejected credit for this time period, reasoning that the defendant was in custody solely on the basis of serving a sentence on the Illinois charge, not in connection with the course of conduct for which sentence was imposed in Wisconsin. The defendant does not now seek, and is not entitled to, sentence credit for this 97 days. He was serving his sentence for the Illinois crime. This time was not served in connection with the course of conduct for which sentence was imposed in Wisconsin. *See State v. Beets,* 124 Wis. 2d 372, 379, 369 N.W.2d 382 (Ct. App. 1985) (no credit for service of sentence on a separate crime). The only period at issue in this case is the time *before* the defendant's sentencing in Illinois on October 19, 2004, on the Illinois offense.

record, an affidavit of an Investigator with the Office of the Public Defender, and the parties' proposed findings of fact. The circuit court issued findings of fact on June 17, 2009. We heard oral argument for a second time on October 21, 2009.

¶ 17. For the reasons set forth, we grant the defendant 305 days of sentence credit on the Wisconsin sentence. We conclude, as do the parties, that under Wis. Stat. § 973.155(1) the defendant's presentence custody in Illinois was in connection with the course of conduct for which he was sentenced in Wisconsin for 305 days. He was in custody in connection with the Wisconsin charge for which he was sentenced from the date of his arrest in Illinois on December 13, 2003, until he was sentenced on an Illinois conviction on October 19, 2004, excluding six days between December 15 and December 21. During those six days the defendant was serving a sentence on an Illinois charge and was not held in custody in connection with the course of conduct for which he was sentenced in Wisconsin.

¶ 18. The decision of the court of appeals is therefore modified and as modified affirmed. The cause is remanded to the circuit court for entry of judgment consistent with this opinion.

II

¶ 19. The facts are not disputed by the parties, although the facts on which we now decide this case differ somewhat from the facts that were presented prior to our remand of the case to the circuit court.[8]

---

[8] In the previous proceedings in this case, both parties and the courts below relied substantially on an investigation report prepared by the Office of the State Public Defender. This report, originally attached to the defendant's postconviction motion, was apparently based on a telephone call with an investigator at

¶ 20. We adopt the findings of fact made by the Circuit Court for Milwaukee County, Patricia D. McMahon, Judge, in compliance with our remand of this case to the circuit court. The parties do not dispute these findings. Findings of fact shall not be set aside unless clearly erroneous. Wis. Stat. § 805.17(2). The circuit court's findings of fact in the present case are not clearly erroneous; they are supported by the 15 exhibits in the record.[9]

---

the extradition unit of the Chicago Police Department. Other parts of the record indicate that the extradition unit was connected with the Office of the Cook County Sheriff.

Several of the circuit court's findings of fact following our remand differ from those stated in this earlier report. For instance, the earlier report stated only that the defendant was "booked in the Cook County Jail" on December 14, 2003. The finding of fact, supported by the Chicago Arrest Report, an exhibit in the record, shows that the defendant was arrested on December 13, 2003. The Investigation Report stated that the defendant was sentenced on the Illinois armed robbery charges on November 2, 2004, while according to the findings of fact, supported by the exhibits, the Illinois sentencing date was actually October 19, 2004.

The Investigation Report also states that the defendant was "charged" with the Wisconsin fugitive warrant on December 16, 2003. This date is not included in the current findings of fact and is uncorroborated by any document now in the record. At oral argument it was clarified that this gap exists at least in part because the Illinois authorities have been unable to locate and provide the extradition file.

Given the discrepancies in what we do now know, we now rely on the circuit court's findings of fact instead of the Investigation Report. The circuit court found that the defendant was arrested on the basis of the outstanding Wisconsin warrant on December 13, 2003.

[9] For a discussion of the "documentary evidence exception" to the clearly erroneous standard of review, see *Phelps v.*

10

¶ 21. The circuit court's final finding of fact states as follows: "From December 13, 2003, until November 2, 2004, defendant was in custody in Illinois. From December 15, 2003, to December 21, 2003, defendant was serving his sentence in Cook County Case No. TZ241194. The balance of the time from December 13, 2003, until October 19, 2004, defendant was held in custody resulting in part from the Wisconsin warrant issued in this case."

¶ 22. Following the Circuit Court's proceedings on remand, the State and the defendant filed a joint response in lieu of submitting letter briefs to this court. They stated that they have no objections to the Milwaukee County circuit court's findings of fact. The parties agreed: (1) that the defendant was arrested in Illinois on December 13, 2003, on the basis of an outstanding Wisconsin felony warrant for first-degree recklessly endangering safety (the offense resulting in the conviction in this case) and an Illinois probation violation warrant; and (2) that the defendant's custody from December 13, 2003, until October 19, 2004, resulted in part from the outstanding felony warrant issued for the defendant by the Milwaukee County Circuit Court.

¶ 23. We shall further discuss the circuit court's findings of fact below when we apply Wis. Stat. § 973.155 to the relevant facts.

¶ 24. The facts of the case and the calculation of 305 days of sentence credit in Wisconsin are perhaps more easily understood when summarized as in the following chart:

*Physicians Ins. Co.*, 2009 WI 74, ¶¶ 37–38 (majority op.), ¶¶ 71–74 (Bradley, J., dissenting).

| TIMELINE | | |
|---|---|---|
| BASED ON CIRCUIT COURT'S FINDINGS OF FACT AND UNDERLYING DOCUMENTS IN RECORD | | |
| _Date_ | _Event_ | _Status for Sentence Credit Purposes_ |
| 3-Sept-02 | Illinois issues arrest warrant for violation of supervision in connection with original conviction for OUI, June 10, 2002. | Not in custody - no effect. |
| 20-June-03 | Carter discharges a weapon in Milwaukee causing the death of Phillip Jordan. | |
| 23-Jul-03 | Wisconsin Felony Arrest Warrant Issued on a charge of 1st degree recklessly endangering safety. | |
| 13-Dec-03 | Carter arrested in Chicago on the Wisconsin Felony Arrest Warrant and on an Illinois warrant for probation violation. | These days (12/13-12/15) count to Wisconsin sentence credit. |
| 14-Dec-03 | Carter transferred to Cook Co. Jail. | |
| 15-Dec-03 | Carter appears in Court. Refuses to waive extradition.<br><br>Supervision revoked in Illinois case and Carter sentenced to 30 days with 3 days credit.<br><br>Chicago PD sends Teletype to Milwaukee PD, giving notice of Carter's custody and refusal to waive extradition, requesting initiation of Governor's Warrant extradition process. | The six days (12/16-12/21) do not count to Wisconsin sentence credit because Carter was serving sentence time on the Illinois probation violation. |
| 21-Dec-03 | Sentence for Illinois probation violation completed. | 302 days, 12/22/03-10/18/04, count towards Wisconsin sentence credit. |
| 6-Feb-04 | Governor's Warrant to extradite signed. | |
| 5-Mar-04 | Chicago Extradition advises Milwaukee PD that Governor's Warrant not yet received. | |
| 19-Oct-04 | Carter sentenced on Illinois armed robbery charges - sentenced to 14 years, 305 days credit given. | |
| 20-Oct-04 | Hold based on Wisconsin charge released. | No time after 10/18/04 counts for sentencing credit. Carter is incarcerated and actually serving his sentence on Illinois armed robbery charge. |

12

¶ 25. The 305–day sentence credit on the Wisconsin sentence which the parties have calculated and which this court accepts as correct is calculated as follows:

| | |
|---|---|
| Dec. 13–15, 2003: | 3 days in Illinois custody. |
| Dec. 22–31, 2003 | 10 days in Illinois custody. |
| Jan. 1–31, 2004 | 31 days in Illinois custody. |
| Feb. 1–29, 2004 | 29 days in Illinois custody. |
| March 1–31, 2004 | 31 days in Illinois custody. |
| April 1–30, 2004 | 30 days in Illinois custody. |
| May 1–31, 2004 | 31 days in Illinois custody. |
| June 1–30, 2004 | 30 days in Illinois custody. |
| July 1–31, 2004 | 31 days in Illinois custody. |
| Aug. 1–31, 2004 | 31 days in Illinois custody. |
| Sept. 1–30, 2004 | 30 days in Illinois custody. |
| Oct. 1–18, 2004 | 18 days in Illinois custody. |

TOTAL: 305 days in Illinois presentence custody.

III

¶ 26. We turn now to describe the several judicial proceedings in the present case, culminating in a second oral argument before this court and the present decision.

¶ 27. The sentence credit statute at issue here, Wis. Stat. § 973.155(1)(a), provides for sentence credit for "all days spent in custody in connection with the course of conduct for which sentence was imposed." Days spent in custody include those days spent in custody while the offender is awaiting trial, is being tried, and is awaiting imposition of sentence. The statute provides:

(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for

13

which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

¶ 28. The defendant's Wisconsin postconviction motion originally sought 324 days of sentence credit against the Wisconsin charge for the days he spent in custody in Illinois.[10]

¶ 29. The circuit court denied the defendant's postconviction motion, erroneously concluding that "[a] defendant is not in custody in connection with the course of conduct for which the sentence is imposed until his custody is surrendered to that jurisdiction."

---

[10] The calculation of 324 days differed in two ways from our holding today. First, it was based on the belief that the defendant had not been sentenced on the Illinois armed robbery charges until November 2, 2004. As explained in note 8, *supra*, the actual sentence date was October 19, 2004. Thus 13 days of presentence custody are eliminated from the total. Second, it was based on credit for six days (December 15–21, 2003) that the record now shows the defendant served on his Illinois operating under the influence sentence. These six days are also excluded from the calculation of Wisconsin sentence credit because the defendant was not in presentence custody in connection with the Wisconsin charge but was actually serving a sentence on an Illinois charge. Correcting for these two differences reduces the calculation to 305 days of sentence credit, as the parties now agree.

14

¶ 30. The defendant appealed to the court of appeals. On appeal, the State did not dispute that the defendant was in custody in Illinois from December 14, 2003, until he was sentenced for the Illinois crime because of both the Illinois charges and the Wisconsin felony warrant.[11] The dispute was whether the defendant's custody in Illinois was properly understood as being "in connection with" the conduct for which he was sentenced in Wisconsin for purposes of § 973.155(1)(a).[12]

¶ 31. The State argued at the court of appeals that a defendant should not be entitled to sentence credit unless the presentence custody in Illinois had been exclusively the result of the Wisconsin charges. In support of its position, the State pointed to the Special Material in Wis JI—Criminal SM-34A, stating that a defendant is entitled to sentence credit if detained in jail in another jurisdiction "when that detention results exclusively from a Wisconsin warrant or detainer."[13]

¶ 32. The court of appeals explicitly rejected this argument, concluding that no case law supported an "exclusivity" requirement and that the case law was "inconsistent with" the Special Materials.

¶ 33. The court of appeals carefully analyzed *State v. Demars,* 119 Wis. 2d 19, 349 N.W.2d 708 (Ct. App. 1984); *State v. Nyborg,* 122 Wis. 2d 765, 768, 364 N.W.2d 553 (Ct. App. 1985); and *State v. Rohl,* 160

---

[11] *Carter,* 2007 WI App 255, ¶ 9.

[12] *Id.*

[13] As the court of appeals explained, "[t]he special material is prepared by the Criminal Jury Instructions Committee and 'is a comprehensive study of the sentence credit statute with guidelines for its implementation in the trial court.' *State v. Gilbert,* 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983)." *Carter,* 2007 WI App 255, ¶ 7, n.6.

Wis. 2d 325, 466 N.W.2d 208 (Ct. App. 1991), cited by the Special Materials, and concluded that these three cases were not applicable to the present case. The first two cases involved an intrastate "detainer," that is, a request by a district attorney to a sheriff of another county that the sheriff continue to detain an accused person for resolution of the requesting county's charges, even if the jurisdiction in which the accused is detained resolves its own charges and would otherwise release the person on whom the detainer has been placed. The court of appeals recognized that the detainer does not trigger sentence credit because it does not carry any custodial mandate; it is a notice that the person is wanted elsewhere.[14] The court of appeals also distinguished the *Rohl* case, which involved consecutive sentences, as not applicable to the instant case, which involves concurrent sentences.[15]

¶ 34. The court of appeals correctly concluded that none of these three cases supports the proposition that a person detained in jail in another state is not "in custody in connection with" a Wisconsin charge under Wis. Stat. § 973.155 unless the person is in custody exclusively pursuant to a Wisconsin warrant.[16] The court of appeals declined the State's suggestion to adopt an exclusivity requirement on the "persuasive authority" of the Special Materials.[17] We agree with the court of appeals' analysis of these cases.

¶ 35. The court of appeals also addressed *State v. Ward*, 153 Wis. 2d 743, 452 N.W.2d 158 (Ct. App. 1989), on which the defendant relied, and our then-recent

---

[14] *Carter*, 2007 WI App 255, ¶ 18.

[15] *Id.*, ¶¶ 19, 22.

[16] *Id.*, ¶ 13.

[17] *Id.*, ¶ 23.

decision in *State v. Johnson* (*Marcus Johnson*), 2007 WI 107, 304 Wis. 2d 318, 735 N.W.2d 505.[18]

¶ 36. In *Ward*, 153 Wis. 2d at 746, the court of appeals concluded, consistent with the conclusion of the Wisconsin Civil Jury Instruction Committee,[19] that "[w]hen concurrent sentences are imposed at the same time or for offenses arising from the same course of conduct, sentence credit is to be determined as a total number of days and is to be credited against each sentence imposed."

¶ 37. In its decision in the present case, the court of appeals concluded that "the [*Marcus*] *Johnson* court did not intend to overrule *Ward*" and that "the principle applied in *Ward* . . . applies in this case—that when a defendant is in custody, presentence, on two separate charges and the sentences are concurrent, the defendant is entitled to sentence credit against each sentence."[20] Furthermore, the *Marcus Johnson* case reinforced the *State v. Beets* decision, 124 Wis. 2d 372, 369 N.W.2d 382 (1985), which held that "unless the acts for which the first and second sentences are imposed are truly related or identical, the sentencing on one charge severs the connection between the custody and the pending charges." *Beets,* 124 Wis. 2d at 383. In other words, once a defendant is actually serving the sentence on a charge, the defendant is not entitled to credit for presentence custody toward sentences on unrelated

---

[18] The 2007 *Marcus Johnson* case was decided after the initial briefing in the present case at the court of appeals, and the court of appeals asked for and received supplemental briefing from the parties on the question whether the 2007 *Marcus Johnson* decision applies to the present case. *Carter,* 2007 WI App 255, ¶ 28.

[19] Wis JI—Criminal SM-34A.

[20] *Carter,* 2007 WI App 255, ¶¶ 28–30.

17

charges, although trial may be pending on the separate charges at the time the defendant is serving the first sentence. Neither the State nor the defendant argues for credit in the present case for the days when the defendant was serving an Illinois sentence.

¶ 38. The court of appeals also concluded in the present case that there was no reason supporting the State's argument that sentence credit is not awarded when concurrent sentences are not imposed at the same time.[21] Finally, the court of appeals concluded that the same rules for sentence credit applied whether the presentence custody was in Wisconsin or in another state.[22]

¶ 39. The court of appeals therefore awarded the 324 days of sentence credit that the defendant sought on the basis of the factual record presented at that time.

¶ 40. On review in this court, the State abandoned its reliance on the Special Materials and took the position that "the Court of Appeals correctly rejected Wis. JI—Criminal SM-34A" because the court of appeals had "correctly analyzed the case law" cited in SM-34A.[23] We agree with the State's decision to abandon its exclusivity argument for the persuasive reasons set forth by the court of appeals.

¶ 41. Moving away from the exclusivity argument in this court, the State's initial brief asserted that the court of appeals had erred in its application of *State v. Ward* and that sentence credit should not be granted on concurrent sentences when those concurrent sentences

---

[21] *Id.*, ¶ 30.

[22] *Id.*

[23] Brief of Plaintiff-Respondent-Petitioner at 7–8.

were imposed at different times, as happened in the instant case.[24]

¶ 42. The State took the position in its initial brief that although the Wisconsin sentence runs concurrent with the Illinois sentence, "[t]he only way Carter would be entitled to sentence credit on his Wisconsin sentence for the days he claims, is if he could demonstrate that he had not received credit for the same pretrial confinement on his Illinois sentence."[25] We now know that the defendant received sentence credit for 305 days on his Illinois sentence.[26]

¶ 43. The defendant argued in this court that the State had waived this argument about the timing of the imposition of the sentences by not raising it at the circuit court or the court of appeals. He further argued that the logic behind the State's new position was flawed and that when a defendant is in custody in connection with the course of conduct underlying two or more cases, and sentences for those cases are imposed concurrently, the sentence credit should be applied to both sentences.[27]

---

[24] The Illinois court imposed sentence on October 19, 2004. The Wisconsin court accepted defendant's guilty plea and imposed a concurrent sentence on August 30, 2005.

[25] Brief of Plaintiff-Respondent-Petitioner at 23.

[26] Findings of Fact No. 10.

[27] The defendant pointed to the equal protection concepts underlying Wis. Stat. § 973.155 and argued that for concurrent sentences, "dual credit 'is necessary to insure that the defendant who was unable to post bail is not incarcerated any longer than a comparable individual who could post bail.'" Brief of Defendant-Appellant at 27 (citing Richard White, *Sentence Credit: More Than Just Math*, Wis. Lawyer, Oct. 1991, at 26, 29).

¶ 44. At our first oral argument it became clear that because sentence credit turned on whether the defendant was in custody in Illinois "in connection with" the Wisconsin charge, the record did not adequately establish the facts of the defendant's arrest and custody in Illinois. We therefore remanded the cause to the circuit court "to receive the documents relating to the Illinois presentence proceedings and for a hearing to determine the ground or grounds on which the defendant was held in an Illinois jail from December 14, 2003, to November 2, 2004."

¶ 45. On remand, defense counsel procured several additional documents. The parties agreed to the submission of fifteen documents as exhibits at the circuit court, which made its findings of fact on the basis of those exhibits.

¶ 46. In the parties' joint response to this court after the remand, the parties agreed that our decision in *State v. Johnson (Elandis Johnson)*, 2009 WI 57, 318 Wis. 2d 21, 767 N.W.2d 207,[28] was controlling in the present case. According to the parties, the unanimous *Elandis Johnson* decision held that "sentence credit is awarded based on whether custody is 'in connection with the course of conduct for which sentence was imposed' without regard to the timing of the imposition of any concurrent sentences," and that "this holding forecloses the state's position that the timing of the imposition of concurrent sentences imposed at different times affects the sentence credit award."[29]

---

[28] The 2009 *Elandis Johnson* case was argued on the same day this court first heard argument in the instant case, September 12, 2008.

[29] Joint Response at 2–3 (citing *Elandis Johnson,* 318 Wis. 2d 21, ¶ 3).

¶ 47. Neither party requested additional oral argument. Nevertheless, we heard extended oral argument for a second time on October 21, 2009.

¶ 48. At oral argument, the State emphasized that its prior argument about the need for simultaneous imposition of concurrent sentences "has been removed, or undercut, or completely done away with . . . by *Elandis Johnson.* Because in my view the teaching of that case is that we do not look at the timing of the imposition of the sentence, with the one exception of consecutive sentences. . . . [W]e look at whether the sentence for which credit is claimed is factually connected with the conduct."

¶ 49. We agree with the State's and defendant's interpretation of the *Elandis Johnson* case and its application to the present case.

## IV

¶ 50. Although the parties agree about how Wis. Stat. § 973.155(1)(a) and the existing case law apply to the undisputed facts in the present case, we are not bound by the parties' interpretation of the law or obligated to accept a party's concession of law.[30] This court, not the parties, decides questions of law.

¶ 51. The provisions of the sentence credit law, Wis. Stat. § 973.155(1), are mandatory. A sentencing court must give credit accorded by statute because "a person [may] not serve more time than that for which he is sentenced."[31]

---

[30] *Bergmann v. McCaughtry,* 211 Wis. 2d 1, 7, 564 N.W.2d 712 (1997).

[31] *State v. Ward,* 153 Wis. 2d 743, 745, 452 N.W.2d 158 (Ct. App. 1989) (quoting *State v. Beets,* 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985)).

¶ 52. Admittedly, the circuit court's findings of fact and the record now before us lack some particulars. Still, any relevant weaknesses are either bridged by reasonable inference from the undisputed facts or are not material. The facts as established by the circuit court and the record are sufficient to apply the established principle of law.

¶ 53. The established principle of law is that a convicted person is entitled to credit, pursuant to Wis. Stat. § 973.155(1), toward his Wisconsin sentence for all days spent in custody outside the state if the custody was in whole or in part "in connection with the course of conduct for which sentence [in Wisconsin] was imposed."

¶ 54. Our unanimous synthesis of the case law in the *Elandis Johnson* decision, 2009 WI 57, 318 Wis. 2d 21, 767 N.W.2d 207, authored by Justice Prosser, controls the present case. In that case the question was whether the statute "requires a court to apply the same sentence credit to *each* concurrent sentence given to an offender at the same sentencing hearing, regardless of whether the offender's days spent in presentence custody were 'in connection with the course of conduct for which [each] sentence was imposed.' "[32] We answered that question in the negative. There, Elandis Johnson received his three concurrent sentences at the same hearing, but they arose from separate cases.[33] The cases arose from separate courses of conduct, and each period of custody for which the defendant sought sentence credit was "tied directly to only one case."[34]

[32] *Elandis Johnson,* 318 Wis. 2d 21, ¶ 2.

[33] *Id.,* ¶ 24.

[34] *Id.*

¶ 55. The defendant in *Elandis Johnson* argued that *Ward,* 153 Wis. 2d 743, on which the defendant in this case also relies, controlled his case.[35] Our *Elandis Johnson* opinion therefore gave *Ward* a "close examination."[36] We observed that in *Ward* the defendant was "in custody in connection with *both* [three marijuana charges] and [two separate cocaine charges] from his arrest until he was sentenced in each of the two cases."[37] We clarified that the court of appeals' apparent reliance on Wis JI—Criminal SM-34A had been "unfortunate" and "not totally accurate." *Elandis Johnson,* 318 Wis. 2d 21, ¶¶ 59, 61.

¶ 56. We analyzed *Ward* in *Elandis Johnson,* 318 Wis. 2d 21, ¶¶ 65–66, as follows:

> *Ward* demonstrates that when a defendant spends time in presentence custody and the reason for that presentence custody is "in connection with the course of conduct for which sentence was imposed," then the time spent in presentence custody must be credited against the ultimate sentence imposed.
>
> . . . .
>
> [I]n order for time in presentence custody to be credited to the sentence imposed, there must be a factual connection between the presentence custody and the sentence.

In other words, in *Elandis Johnson* we rejected the defendant's reliance on a procedural connection between multiple concurrent sentences by emphasizing that it is the factual connection between custody and

[35] *Id.,* ¶ 25.
[36] *Id.,* ¶ 51.
[37] *Id.,* ¶ 53.

the conduct for which sentence is imposed that is controlling.[38]

---

[38] In contrast to this straightforward approach, Justice Prosser spins a long, winding tale about the sentence credit statute. Where the tale leads, and what lesson is to be learned, is difficult to fathom.

Among other detours, Justice Prosser takes up issues never raised or argued in this case's long history, including the definition of custody. *See* Justice Prosser's dissent, ¶¶ 153–168. The dissent cites as "highly relevant" numerous federal cases never previously cited in any Wisconsin decision interpreting Wis. Stat. § 973.155. *See* Justice Prosser's dissent, ¶¶ 138–140 & n.4. Justice Prosser first veers toward the position that the defendant should receive credit only for custody that was *solely* or *exclusively* "in connection with" the underlying offense. *See* Justice Prosser's dissent, ¶¶ 129, 139–140 & n.4, 146–147 & n.5. Persuaded by the court of appeals' decision, the State abandoned the "exclusivity" argument; the Wisconsin statute provides no textual basis for "solely" or "exclusively"; and an exclusivity requirement departs from our established case law. Tellingly, while cases from a number of other states dating back to 1973 have expressly stated that the sentence credit rule in those states is only for custody "solely" in connection with the relevant charge, *see* Justice Prosser's dissent, ¶ 147 & n.5, none of today's several writings has cited any Wisconsin case to have adopted that interpretation. The dissent eventually backs off from contemplating exclusivity to suggest various murky and difficult-to-administer tests that might apply in this situation: Whether the defendant "was held . . . primarily on the charge from Wisconsin," ¶ 129; whether later charges "supersede" or "overwhelm" an established factual connection between custody and the underlying course of conduct, ¶ 201; whether the custody was "grounded almost entirely" in Illinois procedures, ¶ 234; or "how large a factor" one charge or warrant played in the arrest and subsequent custody, ¶ 231.

So at the end of the dissent's twisting tale, it is difficult to discern what result Justice Prosser would favor except to

¶ 57. Thus we must determine in the instant case whether a "factual connection" exists between the defendant's presentence Illinois custody (from December 13, 2003, to October 19, 2004) and the Wisconsin sentence imposed.[39] We now examine the facts in greater detail.

disagree with the result set forth herein. What lessons circuit courts might glean from the dissent's take on the established law remain a mystery.

[39] Justice Roggensack attempts to shift the focus away from the factual connection the court emphasized in *Elandis Johnson* to "necessary legal process," a phrase not used in the statute or in our previous decisions. *See* Justice Roggensack's concurrence/dissent, ¶ 93. According to Justice Roggensack, the defendant's Illinois custody was not "in connection with" the criminal conduct in Wisconsin until the time an Illinois fugitive (or prerequisition) warrant was issued. Justice Roggensack's concurrence/dissent, ¶¶ 100, 103. Reliance on *State v. Hughes,* 68 Wis. 2d 662, 229 N.W.2d 655 (1975), *see* Justice Roggensack's concurrence/dissent, ¶¶ 100–103, is misplaced. *Hughes* did not involve sentence credit or the sentence credit statute.

Furthermore, in *Hughes,* as in the instant case, the person was in custody in the asylum state on the basis of information that the person was wanted on a felony charge in another state.

The defendant in the instant case was taken into custody by valid police authority, on December 13, 2003, when Chicago police arrested the defendant and reported that the arrest was based on the outstanding Wisconsin felony warrant. *See supra* ¶¶ 54–55. Justice Roggensack's logic would appear to deny sentence credit for days in confinement prior to a court appearance in every case where arrest is made prior to the asylum state's issuance of a fugitive warrant. This position cannot be squared with the clear authorization for such "warrantless" arrests in the asylum state (Illinois), provided in the extradition statutes. *See infra,* ¶ 61; Justice Roggensack's concurrence/dissent, ¶ 102. As a practical matter, Justice Roggensack is denying the defendant sentence credit here for

¶ 58. On July 23, 2003, a criminal complaint was filed against the defendant Patrick Carter in Milwaukee County Circuit Court. The defendant, a resident of Chicago, Illinois, was charged with first degree recklessly endangering safety, in violation of Wis. Stat. § 941.30(1). The complaint alleged that while visiting Milwaukee on June 20, 2003, the defendant fired shots that wounded Phillip Jordan, who died from his injuries.

¶ 59. On the same date and together with the complaint, the court issued a "Felony Warrant (and Authorization for Extradition)" authorizing the defendant's arrest.

¶ 60. The felony warrant follows the prescribed form and requirements of a warrant authorized by Wis. Stat. § 968.04. The Wisconsin felony warrant was addressed "to any law enforcement officer" and authorized extradition from any location in the United States.[40]

■

¶ 61. The Wisconsin warrant does have a legal effect outside the state of Wisconsin. Law enforcement officers in Illinois (the state other than the state that issued the warrant) are authorized to lawfully arrest a person on the basis of an out-of-state warrant.[41] Section

the time from when he was arrested, 12:45 p.m. on Saturday, December 13, 2003, until he was brought to an Illinois court on Monday, December 15, 2003.

[40] The Wisconsin "Felony Warrant (and Authorization for Extradition)" is in the record as Exhibit No. 1.

The Wisconsin statute provides that such warrants "shall be directed to all law enforcement officers of the state. A warrant may be served anywhere in the state." Wis. Stat. § 968.04(4).

[41] For an example of a Wisconsin police officer's making an arrest of a person found in Wisconsin on the basis of an

14 of the Uniform Criminal Extradition Act,[42] adopted in "the overwhelming majority of the states,[43] including both Wisconsin and Illinois, authorizes police in the "asylum state" (here Illinois) to lawfully arrest an accused felon "without a warrant upon reasonable information that the accused stands charged in the courts of a[nother] state." Wis. Stat. § 976.03(14); 725 Ill. Comp. Stat. 225/14 (2009).[44] In the instant case, the Wisconsin warrant provided reasonable information for

outstanding Nebraska warrant, see *State v. Hoffman,* 163 Wis. 2d 752, 755, 472 N.W.2d 558 (Ct. App. 1991).

Even if it were arguable, and it is not, that the defendant's arrest and custody in Illinois on the basis of the Wisconsin felony warrant were not lawful, the defendant was factually in custody on December 13, 2003, in connection with the course of conduct in Wisconsin.

[42] *See* 11 U.L.A. Appendix I (2003). The relevant provisions of the Uniform Criminal Extradition Act remain the statutory law of both Wisconsin and Illinois, even though "the Uniform Criminal Extradition Act (as last revised in 1936) was withdrawn from recommendation for enactment by the National Conference of Commissioners on Uniform State Laws in 1982 due to it being superseded by the Uniform Extradition and Rendition Act (1980)." *Id.* at 289.

[43] Wayne R. LaFave et al., *Criminal Procedure* § 18.4(c) (2007).

[44] This provision in its entirety, as codified in Wisconsin at Wis. Stat. § 976.03(14) reads:

(14) Arrest without a warrant. The arrest of a person may be lawfully made also by an officer or a private citizen without a warrant upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year; but when so arrested the accused must be taken before a judge with all practicable speed and complaint must be made against the accused under oath setting forth the ground for the arrest as in sub. (13); and thereafter the accused's answer shall be heard as if the accused had been arrested on a warrant.

Illinois law enforcement officers to know that the defendant was charged with a felony in Wisconsin.[45]

¶ 62. According to the circuit court's findings of fact, "On December 13, 2003, defendant was arrested in Chicago, Illinois, on a probation violation warrant from Illinois and on the Wisconsin warrant."[46] This finding is not clearly erroneous. It is supported by the "Chicago Police Department Arrest Report." The arrest report lists the Wisconsin warrant as the first basis for the arrest. Furthermore, the Illinois arrest report also identifies the outstanding Wisconsin felony warrant with the designation "Warrant No. W064549547." The same number is written on the face of the Wisconsin felony warrant and authorization for extradition, next to the "Authorization for Extradition" on the original Wisconsin felony warrant.

¶ 63. Thus on the face of the Illinois arrest report a factual connection exists between the defendant's arrest and resulting presentence custody in Illinois and the Wisconsin conduct for which the Wisconsin felony warrant was outstanding and for which sentence was

---

Authority for the arrest is confirmed by 725 Ill. Comp. Stat. 5/107–2(1)(b):

> (1) A peace officer may arrest a person when:
>
> . . . .
>
> (b) He has reasonable grounds to believe that a warrant for the person's arrest has been issued in this State or in another jurisdiction[.]

[45] Under the Uniform Act, the governor of each state has a duty "to have arrested and delivered up to the Executive Authority of any other state . . . any person charged in that State with treason, felony, or other crime . . . ." Wis. Stat. § 976.03(2); 725 Ill. Comp. Stat. 225/2.

[46] Finding of Fact No. 2.

later imposed.[47] We need not speculate beyond the record about what motivations the Chicago Police may or may not have had for the defendant's arrest.[48] The

[47] As stated in note 8 above, an earlier investigator's report asserts that the defendant was not "charged" with the Wisconsin Fugitive Warrant until December 16, 2003. Nothing in the record supports this date. Moreover, even if supported, the date is now immaterial, since the fact of the defendant's lawful arrest on the basis of the outstanding Wisconsin felony warrant establishes the factual connection between custody beginning on the arrest date and the conduct that provided the underlying cause for that arrest.

[48] At oral argument there was speculation that the defendant was arrested because he had been under investigation for a June 9, 2002 Illinois armed robbery and that the Wisconsin warrant merely provided a convenient basis to the Chicago police for his arrest to complete the armed robbery investigation:

> Justice Prosser: "My theory is that on the 13th of December, somehow the Chicago Police went out to find [the defendant]. They had an Illinois warrant, and they probably had a Wisconsin warrant as well, and he was a suspect in a robbery."

> Defense Counsel: "While I believe that is speculation, I've speculated exactly the same way. . . .
>
> . . . .

> Justice Prosser: Well that's my speculation here. What we'd hoped is that you would clarify this so we wouldn't have to speculate . . .

> Defense Counsel: Well, my position would be this: When an arresting officer tells me that he arrested someone based on two warrants, we take him at his word. I therefore believe it is not speculation that's what he arrested him on . . . .

Justice Prosser persists in his "speculation." *See* Justice Prosser's dissent, passim and ¶¶ 125–126 & nn.1–2, ¶ 193. This court does not resolve cases on the basis of speculation, confabulation, or "theories" about what may or may not have occurred. We resolve this case on the basis of the record before us and the circuit court's findings of fact based on that record.

circuit court found: "On December 13, 2003, defendant was arrested . . . on the Wisconsin warrant." Finding of Fact No. 2.

Here, the circuit court found as a fact that Carter was arrested on the basis of the Wisconsin warrant, not for the armed robbery. Finding of Fact No. 2. Further, the record contains a Chicago Police Department "Supplementary Report" regarding the armed robbery investigation. The report was completed by the detective who investigated the armed robbery. The report plainly states that sometime after the arrest of Saturday, December 13, 2003, the detective "learned that OFFENDER/CARTER was arrested 13 DEC 03 on an unrelated charge and was in custody at Cook County Jail." The detective investigating the armed robbery made no mention of Carter's court appearance on Monday, December 15, 2003. After learning that Carter was in custody, he interviewed Carter and conducted a physical lineup for identification in the armed robbery investigation. These events took place on December 19, 2003, six days after the arrest. Carter was then arrested for the armed robbery. He was scheduled for an additional court appearance. *See* Exhibit 14. Rather than Justice Prosser's personal "speculation" that police were aware of the armed robbery on December 13 and 15, we instead rely on the contemporaneous report of the detective who investigated that crime, which in our view provides a considerably more convincing account of "what actually happened in Carter's case." *See* Justice Prosser's dissent, ¶ 213.

Justice Ziegler looks askance at certain of the circuit court's findings of fact, or ignores documents in the record that are inconvenient to her view of the case. Yet no justice has identified any one of the circuit court's findings of fact as being clearly erroneous. For instance, Justice Ziegler's dissent, ¶¶ 259, 250, suggests that Chicago Police merely "possess[ed] knowledge" of the outstanding Wisconsin warrant and that there is "no proof that he was arrested . . . on the Wisconsin charge." The Chicago arrest report, which is in the record, specifically identifies the Wisconsin felony warrant as a basis for arrest and resolves any doubts or speculation along these lines.

¶ 64. On December 15, 2003, while still in Illinois custody, the defendant appeared in Cook County Court.[49] This appearance conforms to the requirements of the Uniform Act.

¶ 65. Under the Uniform Act, when the accused is arrested as a result of an out-of-state warrant, "the accused must be taken before a judge with all practicable speed," at which point a complaint is entered on the basis of the criminal charge from the foreign state and "thereafter his answer shall be heard as if he had been arrested on a warrant." Wis. Stat. § 976.03(14); 725 Ill. Comp. Stat. 225/14.

¶ 66. At this court appearance, the Uniform Act requires the judge in the asylum state (here Illinois) to commit the accused fugitive to jail "by a warrant reciting the accusation" if "it appears that the person held is the person charged with having committed the crime alleged and . . . that he has fled from justice." Wis. Stat. § 976.03(15); 725 Ill. Comp. Stat. 225/15. This commitment period is for 30 days, to "enable the arrest of the accused to be made under a warrant of the governor," but it can be extended for an additional 60 days.[50] Thus the defendant could have been kept in Illinois custody for at least 90 days on the basis of the Wisconsin felony warrant without any further action or authority.

¶ 67. At the December 15, 2003 hearing, the defendant refused to waive formal extradition. Under Illinois practice he could not agree to extradition because he had a pending local (Illinois) charge and that

---

[49] Finding of Fact No. 6.
[50] Wis. Stat. § 976.03(17); 725 Ill. Comp. Stat. 225/17.

local charge had to be resolved before he could be sent back to Wisconsin.[51]

¶ 68. On the same date, December 15, 2003, the Chicago Police Department Extradition Unit sent a teletype message to the Milwaukee Police Department, giving notice that the defendant was in custody in Cook County and had refused to waive formal extradition, and requesting that Wisconsin authorities proceed with an application for a governor's warrant.[52]

---

[51] Finding of Fact No 6. *See* 725 Ill. Comp. Stat. 225/19. *See also* Affidavit of Mary E. Taylor. Ms. Taylor, an investigator with the Office of the State Public Defender, Milwaukee Appellate Office, spoke by telephone with Shani Sun, supervisor of the Extradition Unit of the Chicago Police Department. Officer Sun verified "that resolution of a local charge had to occur before a defendant could waive extradition and be sent to another state to face charges." This was also verified by Deborah White, Chief Director-Felony Division of the Cook County Public Defender's Office.

To support this point, defense counsel also submitted into evidence (Exhibit No. 10) a certified transcript from a September 24, 2004 hearing in another case (*State v. Townsend,* No. 01–CF-005345, Circuit Court, Branch 30, Milwaukee County). In that proceeding, Investigator Wayne Layer of the Cook County Sheriff's Department Extradition Unit described in some detail the normal extradition procedures followed in Cook County. He specified that a defendant "couldn't agree to the extradition . . . because he had a local charge, and we had to finish that local charge before we send him back to Wisconsin." Exhibit 10 at 13. At oral argument, counsel for the State said, "I think all the states have this exception where they won't surrender somebody to a demanding state until the felony, if there is one, in their state is resolved."

[52] Exhibit 9. The Uniform Act also creates the procedures for the issuance of a "governor's warrant" to accomplish the extradition of a fugitive charged in one state but arrested and detained in another. *See* Wis. Stat. § 976.03(3)-(8). The proce-

¶ 69. Also on December 15, 2003, the defendant's supervision on the prior Illinois drunk driving charge was revoked, and he was sentenced to serve (and did serve) in the Cook County Jail from December 15 to December 21, 2003, on that revocation charge.[53]

¶ 70. On December 19, 2003, while serving his Illinois OWI charge, the defendant was arrested on two Illinois armed robbery charges.[54]

¶ 71. A Wisconsin governor's warrant for Extradition was signed on February 6, 2004,[55] but on March 5, 2004, the Chicago Police Department sent another teletype to the Milwaukee Police Department advising that the governor's warrant had not been received. This teletype notified the Milwaukee police that the 90–day deadline was approaching, beyond which "the fugitive charge must be dismissed."[56] Although the investigator's report on which prior proceedings relied showed that the defendant was served with the Wisconsin governor's warrant on March 11, 2004, the present record does not document the date on which this service actually occurred. We do know, however, that Illinois was aware on March 5 that the charge "must be dismissed" if the governor's application for a warrant

dure of sending such a teletype to notify Wisconsin authorities of defendant's custody and pending charges in Illinois and to begin proceedings on a governor's warrant followed normal practice in Cook County, according to the prior testimony of Investigator Layer submitted by defense counsel. *See supra* note 51.

[53] Finding of Fact No. 5.

[54] Finding of Fact No. 7.

[55] Finding of Fact No. 8; Exhibit No. 15.

[56] Exhibit 11. The 90–day period of detention authorized by Sections 15 and 17 of the Uniform Act beginning on December 15, 2003 would have expired on March 14, 2004.

were not received and served before the deadline.[57] The hold based on the Wisconsin charges was not, in fact, released until October 20, 2004.[58] Illinois therefore treated the extradition hold as valid until that date. The reasonable inference from the record is that the governor's application for a warrant was received within the 90–day time limit.[59]

¶ 72. On October 19, 2004, the defendant was sentenced to two concurrent sentences of 14 years on two counts of armed robbery in Cook County (Case No. 04CR0055701).[60] The Illinois court credited defendant for 305 days of presentence custody.[61]

¶ 73. As noted, the hold on the defendant based on the Wisconsin charges was released the following day, on October 20, 2004.[62] The record is silent about why, after the governor's warrant issued, the extradition case was dismissed, and the defendant was transferred to the Illinois prison system. At oral argument, counsel for the State said: "For some reason—again, I haven't a clue what goes on down in Illinois—but for some reason after the disposition of his Illinois sentence . . . he went into the Illinois prison system. So he actually came back here . . . under the Uniform Detain-

---

[57] Exhibit 11.

[58] Finding of Fact No. 11.

[59] On this point at oral argument, counsel for the State stated, "On my reading of the record, he was held on fugitive Illinois warrant until the Illinois governor's warrant issued. Now if that was beyond 90 days, I'm not sure how they accomplished that. But I do know it happens. I've seen cases—other cases in which it takes more than 90 days for the extradition process to go through."

[60] Finding of Fact No. 10.

[61] Id.

[62] Finding of Fact No. 11.

34

ers Act." This procedure is also in keeping with what the record reflects to be normal practice in Illinois: once defendant is convicted and sentenced on an Illinois charge, he or she is incarcerated by the Illinois Department of Corrections and the governor's warrant is dismissed.[63]

¶ 74. On June 6, 2005, while still serving the Illinois prison sentence for armed robbery, the defendant was conveyed to Milwaukee County.[64] The State's initial brief in this court surmised that the defendant was returned to Wisconsin pursuant to the Uniform Agreement on Detainers, Wis. Stat. § 976.05(4).[65] On remand, a document executed by the Milwaukee County Deputy District Attorney to the warden of an Illinois corrections institution states that the defendant was transferred to Milwaukee County pursuant to the Interstate Agreement on Detainers for trial.[66]

---

[63] Exhibit 10 at 23–24. This point is clarified in the transcript of testimony from Investigator Layer, *see supra* note 51.

Q: So a known procedure if the prisoner gets a local prison sentence, the governor's warrant goes back to the Chief Judge of the Criminal Division, and it gets dismissed?

A: That's correct.

[64] Finding of Fact No. 12.

[65] Brief and Appendix of Plaintiff-Respondent-Petitioner at 3–4, n.2.

[66] For a discussion of the interstate agreement on detainers, see 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.4(c) (2007) (footnotes omitted). Professor LaFave writes:

[T]he necessity for extradition often can be avoided by proceeding under the Interstate Agreement on Detainers, a Compact which has been adopted by the federal government and virtually all the states. The IAD provides that a prisoner "serving a term of imprisonment" (which excludes a pretrial detainee, a person serving a misdemeanor sentence in the county jail, and perhaps a

35

¶ 75. On August 30, 2005, the defendant entered a plea of guilty to the Wisconsin charge of first degree reckless endangering safety and was sentenced to seven years and six months of initial confinement and five years extended supervision. The Wisconsin sentence was imposed to run concurrently with any other sentence and the sentencing court stated that the Wisconsin sentence could be served either in Wisconsin or in Illinois.[67]

person still in a facility for temporary custody, but includes a person serving a prison term who has other charges pending in the incarcerating jurisdiction) against whom a detainer has been filed must be promptly notified of that fact and of his right to demand trial, and if he demands trial then trial must be had within 180 days thereafter; the request is a waiver of extradition by the prisoner, and the state by adopting the Compact has agreed to surrender the prisoner under such circumstances . . . .

The record in this case is consistent with the procedure for extradition under a detainer. When the defendant made an initial appearance in Wisconsin on June 1, 2005, defense counsel made note that a detainer was filed and that trial must begin on or before September 22, 2005. Subsequently, on June 8, 2005, defense counsel notified the court that the case had been negotiated and a guilty plea was anticipated. The defendant entered a guilty plea on August 30, 2005.

[67] Finding of Fact No. 13. *See also* Transcript of Plea/Sentencing Hearing, Aug. 30, 2005, at 37–38 ("And the court is going to enter a concurrent sentence, and that would be for a initial confinement of 7.5 years and a extended supervision of five years, concurrent to your current sentence. It may be served in Illinois, and you may serve this in an institution there rather than here. You may also do the extended supervision there, if they're willing to take that on. I don't know that they will. If not, it would have to come back here. I think for the [victim's] family's purposes, it probably would be better if you never entered this state again, and perhaps for the state as well, but it's gonna be their determination in Illinois whether they'll take that or not.").

¶ 76. From the records available, the procedures set forth in the Uniform Act appear to have been followed. The defendant was arrested by Chicago Police officers on December 13, 2003, on the basis of the outstanding Wisconsin felony warrant, which provided the arresting officers with "reasonable information" that the defendant was charged with a felony in Wisconsin.

¶ 77. The defendant appeared in court in Illinois on December 15, 2003, and at that time the Chicago Police Department notified the Milwaukee Police Department that the defendant was in custody and requested that the formal request of a "governor's warrant" be initiated. The defendant was thereafter in Illinois custody under the Uniform Act, as well as under Illinois law, awaiting trial for an Illinois offense.

¶ 78. Thus, on the face of the Illinois arrest report and the documents in the record, a factual connection exists between the defendant's presentence custody in Illinois and the Wisconsin sentence imposed. The circuit court's finding of fact that the defendant was arrested and taken into custody in Illinois on the basis of the outstanding Wisconsin felony warrant on December 13, 2003 is not clearly erroneous, and we decline to set it aside.

¶ 79. The circuit court's finding No. 14 is that the defendant's presentence custody in Illinois from December 13, 2003 until October 19, 2004[68] was "custody resulting in part from the Wisconsin warrant issued in this case." This finding is not clearly erroneous. Thus the warrant, the arrest, and the presentence custody

[68] The six days when the defendant was serving a separate sentence on unrelated Illinois charges are excluded from the calculation of sentence credit.

were in connection with the course of conduct for which he was sentenced in Wisconsin.[69]

---

[69] In dissent, Justice Ziegler argues, in essence, that the record inadequately demonstrates that presentence custody in Illinois was "in connection with" the conduct for which the defendant was sentenced. Indeed, she is considerably more zealous in her skepticism of defendant's claims and evidence than was the State.

No one argues this is the best of records, but we review the circuit court's fact-finding for clear error and find none. Justice Ziegler does not specify what clear error she thinks occurred. She appears to object to the absence of Illinois court records for Carter's appearance of December 15, 2003 and protests reliance on law enforcement teletypes regarding Carter's extradition proceedings.

Is Justice Ziegler suggesting a *per se* rule that the circuit courts may only base factual findings on official court records? "Trial courts have broad discretion in determining the relevance and admissibility of proffered evidence." *State v. Larsen,* 165 Wis. 2d 316, 319, 477 N.W.2d 87 (Ct. App. 1991). Here, the teletypes and documentation of Carter's custody in Illinois were accepted as evidentiary exhibits without objection from the State, which does not dispute either their accuracy or their implications.

The critical facts are not disputed. Chicago police not only "possess[ed] knowledge" of defendant's Wisconsin felony warrant, *see* Justice Ziegler's dissent, ¶ 259, but arrested him on the basis of that warrant. The defendant appeared in an Illinois court and Illinois officials began extradition proceedings the same day. Even if there were a procedural shortcoming in the extradition procedures, the defendant remained in custody and the hold based on the Wisconsin conduct and felony warrant was not released until October 20, 2004. The dissent's supposition that procedures may not have been properly followed does not persuade us to deny credit for days when defendant was actually in custody in connection with the conduct for which he was sentenced in Wisconsin. *See* Justice Ziegler's dissent, ¶¶ 252–254.

¶ 80. At the second oral argument, counsel for both the State and the defendant stated that they have independently reviewed the circuit court's findings of fact and each came to the conclusion that the defendant was entitled to 305 days of sentence credit. Having thoroughly examined the record and applied our law interpreting § 973.155(1)(a), we have reached the same conclusion.

¶ 81. For the reasons set forth, we modify the decision of the court of appeals and grant the defendant 305 days of sentence credit on the Wisconsin sentence and, as modified, affirm the decision of the court of appeals.

¶ 82. We conclude, as do the parties, that under Wis. Stat. § 973.155(1) the defendant's custody in Illinois for 305 days was in connection with the course of conduct for which he was sentenced in Wisconsin. He was in custody in connection with the Wisconsin charge for which he was sentenced from the date of his arrest on December 13, 2003, until he was sentenced on an Illinois conviction on October 19, 2004, excluding six days between December 15 and December 21. During those six days the defendant was serving a sentence on an Illinois charge and was not held in custody in connection with the course of conduct for which he was sentenced in Wisconsin.

¶ 83. The decision of the court of appeals is modified and as modified affirmed. The cause is remanded to

Carter's return to Wisconsin under a detainer, *see* Justice Ziegler's dissent, ¶ 257, is not relevant because no sentence credit is given for time after October 19, 2004, when Carter was sentenced in Illinois.

As to Justice Ziegler's concern about setting bail or bond, Justice Ziegler's dissent, ¶ 258, the exact problem is unclear.

39

the circuit court for entry of judgment consistent with this opinion.

*By the Court.*—The decision of the court of appeals is modified and as modified affirmed.

¶ 84. MICHAEL J. GABLEMAN, J. (*concurring*). I join the majority opinion. I write separately to emphasize the narrow and limited extent of our review in this case. Under Wis. Stat. § 805.17(2), "[f]indings of fact shall not be set aside unless clearly erroneous." In this case, the circuit court has made specific findings of fact, and therefore it is our duty to defer to those findings "unless they are unsupported by the record." *Schreiber v. Physicians Ins. Co.*, 223 Wis. 2d 417, 426, 588 N.W.2d 26 (1999). Even if the evidence permits a different finding, an appellate court is to affirm the circuit court's findings of fact "as long as the evidence would permit a reasonable person to make the finding." *Sellers v. Sellers*, 201 Wis. 2d 578, 586, 549 N.W.2d 481 (Ct. App. 1996).

¶ 85. The circuit court found (and the parties agree) that Carter's arrest and confinement in Illinois were based in part on the outstanding Wisconsin felony warrant for first degree recklessly endangering safety. Specifically, the circuit court found that Carter "was arrested in Chicago, Illinois, on a probation violation warrant from Illinois and on the Wisconsin warrant" and that he "was held in custody resulting in part from the Wisconsin warrant issued in this case" from "December 13, 2003, until October 19, 2004," excepting a six-day period while he "was serving his sentence" for the Illinois probation charge.[1]

¶ 86. The circuit court conducted a thorough and diligent review of the evidence and reached a reason-

[1] Findings of Fact 2, 14.

able conclusion for which support exists within the record. It reached its conclusions in part based on inferences, as is proper and as was necessary under the circumstances. Reasonable minds may differ as to the appropriate conclusions to be drawn from such inferences; however, the existence of other reasonable interpretations does not make the findings of the circuit court clearly erroneous.

¶ 87. Because of our obligation to defer to the circuit court's findings of fact, I agree with the majority and the parties that Carter is entitled to 305 days of sentencing credit.[2] *See* majority op., ¶¶ 76–82.

¶ 88. PATIENCE DRAKE ROGGENSACK, J. (*concurring/dissenting*). I concur in that part of the majority opinion that concludes that Patrick Carter is due 302 days of sentence credit for the period between the date on which he finished his Illinois Driving Under the Influence (DUI) sentence, December 21, 2003, and the commencement of his Illinois armed robbery sentence, October 19, 2004.[1] However, because no legal process caused Carter's custody in Illinois to be "in connection with" the Wisconsin crime[2] until: (1) Illinois issued a fugitive warrant for Carter's arrest, based on the Illinois fugitive complaint, and (2) Carter had completed his Illinois DUI sentence, I dissent from the majority opinion's grant of sentence credit prior to December 21, 2003.

---

[2] I agree, however, with Justice Ziegler that the decision in this case addresses a very narrow set of facts and should not be seen as disturbing or modifying the principles established in our prior cases. Justice Ziegler's dissent, ¶ 239.

[1] *See* majority op., ¶ 17.

[2] *See* Wis. Stat. § 973.155(1)(a).

41

## I. BACKGROUND

¶ 89. On August 30, 2005, Carter was convicted of recklessly endangering safety, contrary to Wis. Stat. § 941.30(1). He seeks a redetermination of the sentence credit he is due in connection with that conviction based on time he alleges to have been in custody in Illinois in connection with that crime. The majority opinion grants him 305 days of sentence credit.[3] I would grant him 302 days of credit. The difference may seem small, but the reason for the difference is important.

¶ 90. Carter was arrested in Illinois on December 13, 2003. That arrest was based on an Illinois probation violation warrant for a DUI conviction, dated September 3, 2002. It appears that the Illinois authorities were also aware of the Wisconsin felony warrant,[4] dated July 23, 2003. First, Carter was brought before an Illinois judicial officer on the Wisconsin felony warrant on December 15, 2003.[5] Carter refused to waive extradition to Wisconsin on that date.[6]

---

[3] Majority op., ¶ 9.

[4] Throughout this opinion I use the terms "felony warrant" and "fugitive warrant." As used herein, a "felony warrant" is a warrant issued by a jurisdiction that seeks the arrest of an individual for the alleged commission of a felony in that jurisdiction. A "fugitive warrant" is a warrant issued by an asylum state pursuant to the Uniform Criminal Extradition Act. *See State v. Hughes*, 68 Wis. 2d 662, 669, 229 N.W.2d 655 (1975).

Under the Uniform Criminal Extradition Act, the demanding state is the state that is seeking the return of a defendant from another state. *Id.* at 670. The asylum state is the state where the defendant is physically present. *Id.*

[5] *See* Dallas Tyler, Chicago Police Department Extradition Unit, teletype of 12/15/03.

[6] *Id.*

¶ 91. On December 16, 2003, pursuant to Illinois' enactment of the Uniform Criminal Extradition Act,[7] Illinois issued a fugitive complaint and a fugitive arrest warrant against Carter.[8] My dispute with the majority opinion is that it gives Carter sentence credit for December 13, 2003 through December 15, 2003, when he was not subject to legal process that caused his Illinois custody to be in connection with the alleged commission of a Wisconsin crime for which he received a sentence concurrent with the sentence for the Illinois conviction.

## II. DISCUSSION

### A. Standard of Review

¶ 92. In order to determine the appropriate amount of sentence credit to which Carter is entitled, I interpret and apply Wis. Stat. § 973.155(1)(a) and portions of Wis. Stat. § 976.03, the Uniform Criminal Extradition Act.[9] Statutory interpretation and application present questions of law. *State v. Johnson,* 2007 WI 107, ¶ 27, 304 Wis. 2d 318, 735 N.W.2d 505. We independently interpret and apply statutes, while benefitting from the discussions in preceding judicial opinions. *Spiegelberg v. State,* 2006 WI 75, ¶ 8, 291 Wis. 2d 601, 717 N.W.2d 641.

---

[7] Illinois has adopted the Uniform Criminal Extradition Act as 725 Ill. Comp. Stat. 225/1 *et seq.*

[8] July 5, 2006, Order of the Honorable Mel Flanagan; *see also* Dallas Tyler, Chicago Police Department Extradition Unit, teletype of 12/15/03.

[9] Wisconsin adopted the Uniform Criminal Extradition Act, effective July 1, 1970.

## B. Necessary Legal Process

¶ 93. Wisconsin Stat. § 973.155(1)(a) establishes when sentence credit for presentencing incarceration is due. It provides: "A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."

¶ 94. The application of Wis. Stat. § 973.155(1)(a) requires that I determine whether Carter was "in custody" and also whether all the days of custody were "in connection with the course of conduct for which sentence was imposed." *See Johnson,* 304 Wis. 2d 318, ¶ 31 (citing *State v. Gavigan,* 122 Wis. 2d 389, 391, 362 N.W.2d 162 (Ct. App. 1984) (citing approvingly of *Gavigan's* holding that § 973.155(1)(a) requires two determinations: whether the defendant was "in custody" and whether the custody was "in connection with the course of conduct for which sentence was imposed").

¶ 95. Carter was arrested and taken "in custody" in Illinois on December 13, 2003. Accordingly, the first determination of whether Carter was "in custody" under Wis. Stat. § 973.155(1)(a) has been met.

¶ 96. Our next task is to determine whether all the days Carter spent in custody were "in connection with" the subsequent Wisconsin conviction for reckless endangering, contrary to Wis. Stat. § 941.30(1). We must make this decision based on Carter's proof of legal process that held him in Illinois in connection with the Wisconsin charge of reckless endangerment. *See State v. Demars,* 119 Wis. 2d 19, 25–26, 349 N.W.2d 708 (Ct. App. 1984). As the dissent of Justice Annette Kingsland Ziegler correctly points out, Carter has the burden of

44

proof in this regard.[10] *See State v. Villalobos*, 196 Wis. 2d 141, 148, 537 N.W.2d 139 (Ct. App. 1995) (explaining that "[t]he law places the burden for demonstrating both custody and its 'connection with the course of conduct for which sentence was imposed,' § 973.155(1)(a), Stats., on the defendant. . . .").

¶ 97. Carter's December 13, 2003 arrest was based on an Illinois probation violation warrant that resulted from a DUI conviction. That Illinois warrant was issued September 3, 2002. It appears that the Illinois authorities were aware of a Wisconsin felony warrant because they took Carter before a magistrate on December 15, 2003, on which date he refused to waive formal extradition proceedings.[11]

¶ 98. On December 15, 2003, Carter also was committed to the Cook County Department of Corrections to begin his sentence on the Illinois DUI conviction.[12] Carter's service of his DUI sentence precluded sentence credit from December 15, 2003 through December 21, 2003, when that sentence concluded. *See State v. Beets*, 124 Wis. 2d 372, 380, 369 N.W.2d 382 (1985) (affirming that "an offender was not entitled to sentence credit for the time spent in custody awaiting sentence on a robbery charge when he was simultaneously in custody serving a misdemeanor sentence for fleeing the scene of a crime").

¶ 99. On December 16, 2003, in preparation for formal extradition to Wisconsin, it appears that Illinois

---

[10] Justice Ziegler's dissent, ¶ 244 (citing *State v. Villalobos,* 196 Wis. 2d 141, 148, 537 N.W.2d 139 (Ct. App. 1995)).

[11] *See* Dallas Tyler, Chicago Police Department Extradition Unit, teletype of 12/15/03.

[12] *See* Cook County, Illinois Clerk of Circuit Court Order of Sentence and Commitment, Dec. 15, 2003.

issued a fugitive complaint and an Illinois fugitive warrant,[13] based on the outstanding Wisconsin charges. *See* 725 Ill. Comp. Stat. 225/13.[14] The function of the fugitive warrant was to arrest Carter in Illinois in order to hold him lawfully in custody in Illinois for extradition to Wisconsin. *See State ex rel. Wells v. Hanley,* 250 Wis. 374, 375, 27 N.W.2d 373 (1947) ("The function of the fugitive warrant under which the relator is detained is to provide for his arrest and detention pending the institution and conduct of an extradition proceeding."); *see also Illinois v. Martin,* 567 N.E.2d 1097, 1098–99 (Ill. App. Ct. 1991).

¶ 100. In *State v. Hughes,* 68 Wis. 2d 662, 229 N.W.2d 655 (1975), we examined the procedure for issuing a fugitive complaint and a fugitive warrant under the Uniform Criminal Extradition Act and the effect of instituting that legal process. I relate such procedures here because they are illustrative of when a defendant's custody becomes custody in connection with the Wisconsin crime for which a concurrent sentence was imposed.

¶ 101. In *Hughes,* the Beloit Police Department received a teletype message from Batesville, Mississippi, informing them of Mississippi warrants for the arrest of Hughes for assaulting a police officer. *Id.* at 664. Pursuant to that teletype, Hughes was arrested by the Beloit police. *Id.*

¶ 102. The Mississippi warrants and affidavits in support of those warrants arrived in Beloit shortly thereafter, whereupon they were sent to the district

---

[13] *See* Dallas Tyler, Chicago Police Department Extradition Unit, teletype of 12/15/03.

[14] 725 Ill. Comp. Stat. 225/13 is part of Illinois' Uniform Criminal Extradition Act. 725 Ill. Comp. Stat. 225/13 of the Illinois Code parallels Wis. Stat. § 976.03(13).

attorney's office for the preparation of a fugitive complaint. *Id.* at 665. An arrest of a person wanted in another state may be made with or without a warrant, Wis. Stat. § 976.03(13), (14). *Id.* at 668–69. In either case, a fugitive complaint is required to be issued. *Id.* at 669. Thereafter, a judge must satisfy himself that the person upon whom the fugitive complaint is served is the person charged with the commission of a crime in the demanding state and that the person has fled the demanding state. *Id.* If the judge is so satisfied, he then issues a "prerequisition" or "fugitive" warrant, for the arrest and confinement of the defendant, pending the issuance of the governor's requisition warrant. *Id.*; Wis. Stat. § 976.03(15).

¶ 103. It is only after the fugitive complaint and the prerequisition or fugitive warrant have been issued and served upon the defendant that the defendant is held in custody by the asylum state for the charges pending in the demanding state. *Hughes,* 68 Wis. 2d at 669.

¶ 104. The issuance of the fugitive complaint and fugitive warrant by Illinois held Carter for extradition to Wisconsin for 30 days.[15] 725 Ill. Comp. Stat. 225/15. Illinois notified Wisconsin of the legal process it had in place and requested that Governor Doyle sign and present an extradition warrant to Illinois.[16] When the Wisconsin extradition warrant did not arrive in 30 days, Illinois extended the period of detention for 60 additional days and it notified Wisconsin that the Illinois

[15] This initial period could be extended for an additional 60 days. 725 Ill. Comp. Stat. 225/17; Wis. Stat. § 976.03(17).

[16] *See* Dallas Tyler, Chicago Police Department Extradition Unit, teletype of 12/15/03.

47

detention would end March 14, 2004, if Illinois had not received the governor's extradition warrant before that date.[17]

¶ 105. Governor Doyle signed the extradition warrant on February 6, 2004, and it was served on Carter on March 11, 2004.

¶ 106. Carter was convicted of the Illinois armed robbery charge and he was sentenced for it on October 19, 2004. The Wisconsin governor's warrant was vacated on October 20, 2004. At the commencement of Carter's Illinois sentence for armed robbery, he was no longer being held in Illinois in connection with Wisconsin charges on which he was later convicted and for which he received a concurrent sentence. *See Beets,* 124 Wis. 2d at 380. Carter was later returned to Wisconsin pursuant to a detainer agreement with Illinois.[18] No sentence credit accrues for the time spent on detainer. *State v. Nyborg,* 122 Wis. 2d 765, 768, 364 N.W.2d 553 (Ct. App. 1985) (citing *Demars,* 119 Wis. 2d at 26). After Carter's Wisconsin conviction, he was returned to Illinois to complete his Illinois sentence for armed robbery.

## III. CONCLUSION

¶ 107. I concur in that part of the majority opinion that concludes that Carter is due 302 days of sentence credit for the period between the date on which he finished his Illinois DUI sentence, December 21, 2003, and the commencement of his Illinois armed robbery sentence, October 19, 2004. However, because

---

[17] *See* Dallas Tyler, Chicago Police Department Extradition Unit, teletype of 03/05/04.

[18] *See* Wisconsin Department of Health & Social Services, Division of Corrections, Prosecutor's Report on Disposition of Charges, Sept. 8, 2005.

no legal process caused Carter's custody in Illinois to be "in connection with" the Wisconsin crime until: (1) Illinois issued a fugitive warrant for Carter's arrest, based on the Illinois fugitive complaint, and (2) Carter had completed his Illinois DUI sentence, I dissent from the majority opinion's grant of sentence credit prior to December 21, 2003.

¶ 108. DAVID T. PROSSER, J. (*dissenting*). The facts often determine the law. My first purpose in this dissent is to set out the facts as clearly and completely as an inadequate record permits. My second purpose is to apply the law to these facts.

I

¶ 109. On December 13, 2003, the defendant, Patrick C. Carter, was arrested in Chicago. He was taken into custody on a probation violation arrest warrant that was issued by a Cook County judge on September 3, 2002. He also was arrested on a July 23, 2003, felony warrant issued in Wisconsin.

¶ 110. These grounds for arrest will be discussed in turn.

¶ 111. Patrick Carter was convicted of driving under the influence (DUI) in Cook County, Illinois, on June 10, 2002. He was released after being placed under 18 months of supervision. The court enumerated several conditions of release. Carter was ordered to report to a social services agency and to complete a "Comprehensive Correctional Intervention Assessment and fully comply with the Comprehensive Correctional Intervention Plan." In addition, Carter was to (a) pay all fines, costs, and assessments ordered by the court before his supervision expired; (b) not violate any criminal statute

49

of any jurisdiction; and (c) refrain from possessing any firearm or any other dangerous weapon.

¶ 112. On September 3, 2002, a Cook County judge signed a warrant for Carter's arrest because he had violated his supervision. The warrant fixed bail at $5,000. Carter was picked up on this warrant on December 13, 2003. He was carrying a handgun. Possession of a firearm violated another condition of Carter's supervision.

¶ 113. The day before Carter's DUI conviction in 2002, he participated in the armed robbery of a liquor store on Devon Avenue in Chicago. He and another man entered the store and demanded money. Carter's partner was carrying a handgun and used it to strike the male proprietor in the head. Carter himself chased the female proprietor to the back of the store, demanded money, and struck her in the face with his fist. The two men escaped with money taken from the cash register.

¶ 114. A Chicago police report of the incident indicated that the male victim had seen the two perpetrators in the store before. A later police report indicated that Carter and Eric T. Minor were identified in a photo lineup on June 16, 2002. Minor was the subject of Chicago Police Department Investigative Alert #299908348 concerning the liquor store robbery. The record does not show whether Carter was the subject of a similar Investigative Alert, but that is likely because Carter was a convicted felon who had been identified by two witnesses as the other man who robbed the store.

¶ 115. An Investigative Alert is not an arrest warrant, but its issuance means that police have reasonable grounds to stop a suspect and detain him for a reasonable time to question him about a crime. Illinois law provides that a peace officer may arrest a person when the officer "has reasonable grounds to believe that

50

the person . . . has committed an offense." 725 ILCS 5/107–2(c). Chicago police had reasonable grounds to arrest Carter for robbery based on his identification by two people in a photo lineup seven days after the crime.

¶ 116. On June 19, 2003, Patrick Carter was living in Wisconsin. On that evening, about midnight, after a friend was beaten up, Carter went out with a borrowed handgun and opened fire at people on the porch of a house on North 1st Street. The house was linked to people who had assailed his friend. One of Carter's gunshots hit Phillip Jordan, Jr., in the head. Jordan, 21, was taken to a hospital and later died.

¶ 117. After the shooting, Carter returned to Chicago. There, he was arrested about six months later on December 13. In the meantime, the Milwaukee County District Attorney's Office had charged Carter with recklessly endangering safety, first degree, contrary to Wis. Stat. § 941.30(1). The criminal complaint quotes Carter as telling a witness that he just "aired those [_____ _____] out," but it fails to mention that Phillip Jordan died from the shooting.

## II

¶ 118. The day after he was arrested in Chicago, Carter was transferred to the Cook County Jail. He appeared in court on the Wisconsin warrant on December 15. The record does not indicate whether the court set bail or denied bail.

¶ 119. In another court on December 15, Carter's supervision on the DUI was revoked and he was sentenced to 30 days in the Cook County Department of Corrections, with sentence credit of three days. His sentence on the DUI was completed on December 21—much less than 30 days. Consequently, Carter was

in custody on the DUI from December 13 to December 21, 2003, a total of nine days.

¶ 120. In response to this court's order last term requesting additional facts, Milwaukee County Circuit Judge Patricia D. McMahon made several findings based on documents provided to her. These findings included the following:

> 6. On December 15, 2003, defendant appeared in Cook County Court and refused to waive extradition. Defendant could not agree to extradition because he had a pending local charge and that local charge had to be resolved before he could be sent back to Wisconsin.

> 7. On December 19, 2003, defendant was arrested on a charge of armed robbery, based on an incident which had occurred on June 9, 2002.

¶ 121. Some of these findings require comment. Judge McMahon's finding that Carter "refused to waive extradition" is not based on any official court document. It is based on a December 15 teletype from the Chicago Police Department Extradition Unit to the Milwaukee Police Department advising that "Your fugitive in our custody. . . . Appeared our ct this date & refused to waive formal extradition."

¶ 122. Judge McMahon relied on a September 24, 2004, transcript from an unrelated case, *State v. Jeffrey Townsend*, #01–CF–005345, Circuit Court, Milwaukee County, to explain Carter's refusal to waive extradition. In the *Townsend* transcript, a Cook County Sheriff's Department Extradition Unit officer was asked: "So how is it you knew he was not going to agree to extradition?" Answer: "Well, I knew that he couldn't agree to the extradition part because he had a local charge, and we had to *finish that local charge* before we send him back to Wisconsin." (Emphasis added.)

52

¶ 123. This testimony is the source of Judge McMahon's statement that "Defendant could not agree to extradition because he had a pending local charge and that local charge had to be resolved before he could be sent back to Wisconsin." The wording of the teletype about Carter is quite similar to the teletype described in the *Townsend* case testimony:

> This is a teletype that we send automatically to the jurisdiction that wants the wanted subject that we have in custody. This is telling the Milwaukee Police Department . . . that the above subject, Jeffrey Townsend, is in our custody, is fighting extradition back to your state of Wisconsin, and we also advise his next court date.

Given the explanation of the Townsend teletype in that testimony, there is no hard evidence that Carter actually "refused" extradition.

¶ 124. Judge McMahon's statement also does not specify what "local charge" the court is alluding to. The charge could be the DUI on which Carter would be serving time after revocation. On the other hand, the charge could be the robbery charges that were imminent. In either event, the court's finding is very important to the resolution of this case. It is not relevant whether Carter waived extradition or refused extradition: he was not going anywhere until Illinois "finish[ed] that local charge."

¶ 125. According to Chicago police documents, Patrick Carter was identified in a photo array on June 16, 2002, as a participant in the June 9, 2002, robbery. It is a little hard to believe that Chicago police knew about Carter's probation violation arrest warrant and the Wisconsin arrest warrant but were not aware that Carter had been identified by two people as a partici-

pant in an armed robbery, when they took him into custody on December 13, 2003.[1]

¶ 126. The *Townsend* transcript explains that authorities check on local charges *before* they take a prisoner to court on an out-of-state warrant, inasmuch as local charges will have priority. This could explain why several days after Carter's arrest, robbery investigators arranged for a "Writ and physical lineup including Carter" to be held on December 19, 2003. On that day, they picked Carter up at 9:15 a.m. at the jail and transported him to "Area 3" for the lineup. They gave him *Miranda* warnings at 9:25 a.m. Carter gave an oral statement and then a written statement, and he was identified by both victims as one of the June 9, 2002, robbers.[2]

¶ 127. Judge McMahon found that Carter was arrested on December 19, 2003, on a charge of armed robbery. On that date, Carter was still in jail serving his DUI sentence.

---

[1] The record contains an Investigation Report from Mary E. Taylor, dated 6–13–06, to Assistant State Public Defender Richard D. Martin. The report recounts Taylor's telephone conversation, 6–13–06, with Wayne Layer, an investigator with the Cook County [Sheriff's] Department Extradition Unit. The report reads in part: "12/14/03—Defendant booked in the Cook County Jail; Hold placed on defendant re: *Robbery, DUI,* and Extradition Cases." (Emphasis added.)

[2] If the Chicago Police Department maintained an Investigative Alert on Patrick Carter concerning the June 9, 2002, robbery, as they did on Eric Minor, Chicago officers may have decided not to arrest him for the robbery on December 13 so that they did not have to bring him before a judge on that charge. Police had other grounds on which to hold him. The delay gave police the opportunity to question Carter, obtain inculpatory statements from him, and arrange for a lineup before Carter was entitled to counsel on the robbery.

¶ 128. The record does not indicate when Carter made his initial appearance in Cook County court on the robbery charges. The next day, December 20, 2003, was a Saturday. Carter may not have appeared in court that Saturday or the next day, but a lengthy delay would have been inappropriate. At his initial appearance, Carter would have been entitled to bail. Under Illinois law, a defendant must post "a sum of money equal to 10% of the bail" to be eligible for release. 725 ILCS 5/110–7.

¶ 129. Notwithstanding his two inculpatory statements to police, Carter fought the robbery charges for many months. He remained in custody until October 19, 2004, when he entered a guilty plea and was sentenced on two robbery counts concurrently to 14 years in prison. Carter has not established that before this sentencing he was held exclusively or even primarily on the charge from Wisconsin.

### III

¶ 130. The issue presented in this case is how much sentence credit, if any, Patrick Carter is entitled to on his Wisconsin conviction for reckless endangerment, first degree, for the time he spent in the Cook County Jail or other Illinois custody, from December 13, 2003, when he was arrested, through October 19, 2004, when he was convicted and sentenced on the liquor store robbery. This requires the court to interpret Wis. Stat. § 973.155, which reads in part:

> Sentence credit. (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As

used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

(b) The categories in par. (a) . . . include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold under s. 302.113(8m), 302.114(8m), 304.06(3), or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.

¶ 131. Wisconsin Stat. § 973.155(1) should be interpreted the same as other statutes by looking first at the language of the statute. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).

¶ 132. The sentence credit statute carries a heavy burden because it must be applied in an "almost endless variety" of factual circumstances. *State v. Elandis Johnson,* 2009 WI 57, ¶ 23, 318 Wis. 2d 21, 767 N.W.2d 207. As a result, courts have often determined that the statute is ambiguous as to specific facts, *see State v. Marcus Johnson,* 2007 WI 107, 304 Wis. 2d 318, 735 N.W.2d 505; *State v. Floyd,* 2000 WI 14, 232 Wis. 2d 767, 606 N.W.2d 155; *State v. Tuescher,* 226 Wis. 2d 465, 595 N.W.2d 443 (Ct. App. 1999); *State v. Gavigan,* 122 Wis. 2d 389, 362 N.W.2d 162 (Ct. App. 1984); and they have looked beyond the text to extrinsic sources.

¶ 133. Wisconsin Stat. § 973.155 was part of 1977 Senate Bill 159, which became Chapter 353, Laws of 1977. The language in § 973.155(1)(a) has been the same since it became law in May 1978.

¶ 134. The language in § 973.155(1)(a) was derived from 18 U.S.C. § 3568 (1977), which read in part:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. *The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.* (Emphasis added.)

¶ 135. One of the early cases interpreting § 973.155 was *Gavigan,* in which the court noted:

> Section 973.155, Stats., was created by ch. 353, Laws of 1977. This section established an entitlement to sentence credit that was broader than prior case law and was intended to extend credit for all days spent in custody in connection with the course of conduct for which sentence was imposed.... Our supreme court recommended to the legislature that a simpler, more equitable system be enacted based on the federal system. Within a short time, sec. 973.155 was enacted and it is similar to the federal statute.

*Gavigan,* 122 Wis. 2d at 392 (footnotes omitted). *State v. Boettcher,* 144 Wis. 2d 86, 91–93, 423 N.W.2d 533 (1988), has a more extensive discussion of the history of § 973.155(1) and 18 U.S.C. § 3568. *Boettcher* noted that the state statute had its genesis in the federal statute and employs controlling words that are identical in meaning. *Id.* at 95.

¶ 136. These cases establish the link between § 973.155 and 18 U.S.C. § 3568. Both the *Gavigan* court and the *Boettcher* court utilized federal cases interpreting the federal statute as they made their own decisions. "Federal court cases dealing with similar facts and construing a similar statute have reached the same result." *Gavigan,* 122 Wis. 2d at 394 (footnote omitted). The federal statute is "persuasive authority in interpreting the Wisconsin statute." *Boettcher,* 144 Wis. 2d at 92.

¶ 137. In *State v. Beets,* 124 Wis. 2d 372, 369 N.W.2d 382 (1985), this court also cited federal cases "interpreting the analogous federal statute, 18 U.S.C., sec. 3568," for guidance in interpreting Wisconsin's sentence credit statute. *Id.* at 380–81.

¶ 138. Although 18 U.S.C. § 3568 was repealed and recreated in revised form in 1984,[3] federal cases interpreting 18 U.S.C. § 3568 are highly relevant because the former statute was not only "analogous" but also the acknowledged source of Wis. Stat. § 973.155(1), and the Wisconsin statutory provision at issue has not changed.

---

[3] *See* 18 U.S.C. § 3585, which reads in part:

(b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.* (Emphasis added.)

The last clause of (b) puts into statutory language the long-standing disapproval of dual credit in federal courts.

¶ 139. When they interpreted 18 U.S.C. § 3568, federal courts consistently denied credit on federal sentences for time spent in state custody, with one notable exception. In *Anglin v. Johnston,* 504 F.2d 1165 (7th Cir. 1974), the court stated:

> The only situation where credit has been given for the serving of time for a different offense is *where a state prisoner has been denied release on bail solely because of an outstanding federal detainer lodged against him.* In that case courts have held that he is in custody "in connection with" the federal offense and entitled to credit against his federal sentence for time spent in state custody under those circumstances.

*Id.* at 1169 (emphasis added) (citations omitted). *Anglin* was the established law in the Seventh Circuit at the time Wisconsin adopted Wis. Stat. § 973.155(1) in 1978.

¶ 140. The interpretation of 18 U.S.C. § 3568 was summed up several years later in *Boniface v. Carlson,* 856 F.2d 1434 (9th Cir. 1988), where the court said:

> A prisoner in state custody who cannot secure his release on bail because of a federal detainer is entitled to credit against his federal sentence for the time he would otherwise be out free on bail. *See* 18 U.S.C.A. § 3568 (West 1985) (repealed 1984, effective Nov. 1, 1986). To secure this credit, however, the prisoner must establish not only that the federal detainer was the sole reason for the denial of bail, but also that the state did not credit his state sentence for that time.

*Id.* at 1436 (citations omitted).[4]

---

[4] *See also:*

 1. *Shaw v. Smith,* 680 F.2d 1104 (5th Cir. 1982):

¶ 141. As noted, the legislature adopted § 973.155(1) in the 1977 session. Thereafter, the Wisconsin Criminal Jury Instructions Committee drafted special materials to suggest standards for the proper determination of sentence credit under the new statute. Wis. JI—Criminal, Part III, SM-34A. In 1982 the Committee attempted to define the phrase "in custody." It drew upon the definition of "custody" in Wis. Stat. § 946.42 (1981) and then gave examples:

> In sum, the Attorney General is ordinarily not required to give credit toward a federal sentence for time spent by a prisoner serving a sentence imposed by another jurisdiction for an unrelated offense.
>
> Case law has, however, established one general exception to this basic rule. Time spent in state custody, even if for an unrelated offense, must be credited toward time served on a federal sentence "if the continued state confinement was exclusively the product of such action by federal law-enforcement officials as to justify treating the state jail as the practical equivalent of a federal one." *Ballard v. Blackwell,* 449 F.2d 868, 869 (5th Cir. 1971). "If, for example, a state defendant is denied bail solely because of a federal detainer issued against him, the time spent in state custody awaiting trial must be credited to his federal sentence." *United States v. Shillingford,* 586 F.2d 372 (5th Cir. 1978).

*Id.* at 1106 (citations omitted).

2. *United States v. Blankenship,* 733 F.2d 433 (6th Cir. 1984):

> However, the evolved legal precedent also teaches that the credit against the federal sentence attaches only when the federal detainer is the *exclusive reason for the prisoner's failure to obtain his release on bail.*
>
> . . . *Since appellant's failure to obtain release on bond was not caused by the federal detainer, he is not entitled to a credit against his federal sentence.*

*Id.* at 434 (emphasis added) (citations omitted).

60

The following situations would be within this definition of custody:

1. detention in the county jail before bail is set or thereafter;

2. detention in the county jail during nonworking hours as a condition of bail release or probation;

3. commitment for the determination of competency to stand trial under § 971.14(2) or commitment as not competent to stand trial under § 971.14(5);

4. *detention in jail in another state when that detention is in connection with a course of conduct for which sentence is imposed in Wisconsin.*

Wis. JI—Criminal SM-34A at 6 (1982) (emphasis added).

¶ 142. The Committee's out-of-state example was ambiguous. Three months before the Committee issued special materials on Wis. Stat. § 973.155(1), Attorney General Bronson C. La Follette released an opinion on sentence credit for revoked probationers and parolees. 71 Wis. Op. Att'y Gen. 102 (1982) (OAG 29–82). La Follette described a situation "where a parolee is picked up in the foreign jurisdiction on a parole violation warrant issued in Wisconsin but, prior to being returned to this state, is charged in the foreign jurisdiction with a new criminal violation." *Id.* at 105.

The intervening period between arrest on a parole violation warrant and the issuance of charges by the foreign jurisdiction would be the result of the Wisconsin revocation proceeding, and thus subject to the credit provisions . . . . Similarly, the period of custody between the completion of the parolee's custodial period in the foreign jurisdiction and the time he is picked up by Wisconsin authorities to be returned to this state would be credited.

61

*Id.* at 105–06. The period after the "issuance of charges" and "the completion of the parolee's custodial period in the foreign jurisdiction" would not lead to sentence credit. La Follette's opinion was consistent with federal court rulings.

¶ 143. By 1986 the committee had reconsidered the wording of its out-of-state example because it was too broad. It changed the special materials to read:

> 4. detention in jail in another state when that detention results exclusively from a Wisconsin warrant or detainer.

Wis. JI—Criminal SM-34A at 7 (1986).

¶ 144. The 1986 special materials then gave an additional example:

> *Not* included within the definition of "custody" for sentence credit purposes are the following situations:
>
> . . . .
>
> 4. detention in another state based on an offense committed in that state, even if a Wisconsin warrant or detainer has also been filed.

*Id.* at 8.

¶ 145. These two examples were in complete conformity with the federal interpretation of 18 U.S.C. § 3568 and the Attorney General's opinion. The Committee explained its examples as follows:

> 4. Credit should be granted when, for example, a Wisconsin parolee is arrested in Illinois solely because of a Wisconsin warrant. Credit should not be granted when a Wisconsin parolee, already in custody on Illinois charges, has a Wisconsin hold or warrant filed against

him. This is consistent with the conclusion that filing a detainer against one already in custody in Wisconsin does not result in "custody" under § 973.155 on the charge which is the subject of the detainer.

Comment to Wis. JI—Criminal SM-34A at 23 (1986). The Committee cited two Wisconsin cases: *State v. Demars,* 119 Wis. 2d 19, 348 N.W.2d 708 (Ct. App. 1984), and *State v. Nyborg,* 122 Wis. 2d 765, 364 N.W.2d 553 (Ct. App. 1985).

¶ 146. The 1988 version of the special materials contained the exact same examples and explanation. The 1991 version is the same except that the committee added *State v. Rohl,* 160 Wis. 2d 325, 466 N.W.2d 208 (Ct. App. 1991), as additional support for its examples.

¶ 147. The 1995 version of the special materials includes the same examples and explanation as the 1991 version, and the 1995 version is the latest to be issued on this point. In short, detention in another state based on an offense committed in that state, even if a Wisconsin warrant or detainer has also been filed, has been excluded from the interpretation of "custody" for sentence credit purposes since the early 1980s.[5] *Rohl*'s facts vindicated the committee's second sentence.

---

[5] The sentence credit rule explained in the special materials is not only the federal rule but also the rule in most states. "[T]he overwhelming majority of states allow for the granting of credit for time served in presentence confinement while awaiting extradition when *the sole reason* for the foreign incarceration is the offense for which the defendant is ultimately convicted and sentenced." *Nieto v. State,* 70 P.3d 747, 748 (Nev. 2003) (emphasis added); *see also Kronz v. State,* 462 So. 2d 450 (Fla. 1985) (allowing trial courts discretion to grant credit "when the defendant was incarcerated in another state solely because of the Florida offense for which he or she is being sentenced"); *Jennings v. Hunt,* 272 So. 2d 333, 334 (La. 1973) (authorizing sentence credit "where the out-of-state detention

¶ 148. In an opinion filed November 1, 2007, the court of appeals repudiated the examples set out in the special materials. *State v. Carter,* 2007 WI App 255, 306 Wis. 2d 450, 743 N.W.2d 700. The court rejected "the State's argument that, because [Carter] was not exclusively in custody on the Wisconsin charge, he was not entitled to sentence credit for the time he was in custody in Illinois." *Id.,* ¶ 2. The court added:

> We conclude that Carter is entitled to sentence credit for the days from December 14, 2003, when he was taken into custody in Illinois based on the charge in this case, until November 2, 2004, when he was sentenced on the Illinois charge.

*Id.,* ¶ 31. According to the court of appeals, Carter was entitled to 324 days of sentence credit. *Id.*

¶ 149. In retrospect, the court of appeals was presented with incorrect facts. It also misconstrued the law. Some of the factual errors are revealed in the majority's opinion. The legal deficiencies are largely

results solely from the sentencing state's detainer on a fugitive complaint"); *State v. Brown,* 348 N.W.2d 743, 748 (Minn. 1984) (applying credit "to time spent in jail in another state solely in connection with the offense of sentencing while awaiting extradition"); *State v. Duran,* 960 A.2d 697, 707 (N.H. 2008) (granting credit where "sole reason" for confinement was in-state warrant); *Commonwealth v. Bortner,* 326 A.2d 622, 623 (Pa. Super. Ct. 1974) (holding that the defendant should be given credit "if he was detained in Ohio solely by reason of the Pennsylvania charge and not by reason of the separate Ohio charges"); *State v. Coe,* 554 A.2d 656, 659 (Vt. 1988) (relying on state and federal precedent to conclude that a defendant "bears the burden of establishing that the charge on which sentence is imposed was the sole basis of the custody at issue").

adopted in the majority opinion. Thus, although the correct rule to decide this case is stated in the special materials, the majority opinion, which changes the rule, requires a comprehensive response.

## V

¶ 150. Determining sentence credit is one of the most common duties of a circuit court. This duty requires the circuit court to answer two questions. First, was the defendant "in custody" within the meaning of Wis. Stat. § 973.155(1)? Second, was all or part of the "custody" for which sentence credit is sought "in connection with the course of conduct for which sentence was imposed"? *Elandis Johnson,* 318 Wis. 2d 21, ¶ 27 (citations omitted).

¶ 151. Sometimes the amount of sentence credit turns on the interpretation of the words "in custody." Other times it turns on the interpretation of the "in connection with" clause. On occasion, the court's determination requires interpretation of both factors.

A. "In Custody"

¶ 152. Almost from the beginning, Wisconsin courts have wrestled with the meaning of "in custody." In a lay sense, a person who is confined to a county jail in Wisconsin or another state is in custody. But confinement may not equal "custody" or qualify the person for sentence credit under the statute.

¶ 153. The special materials explain that "in custody" is not defined for purposes of § 973.155. The materials suggest that "the definition of 'custody' used for purposes of the criminal escape statute, § 946.42, may be applicable to the sentence credit issue: If any

65

part of the offender's status would be considered 'custody' for purposes of the escape statute, credit is due." Wis. JI—Criminal, Part III, SM-34A, at 5. This court, in *State v. Gilbert,* 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983), used this standard and applauded the committee's work.

¶ 154. One implication of the committee's analysis is plain: A person confined to an Illinois jail is not "in custody" within the meaning of § 946.42 because Wisconsin may not prosecute an escape from an Illinois jail or any other out-of-state institution.

¶ 155. In *State v. Demars,* 119 Wis. 2d 19, 349 N.W.2d 708 (Ct. App. 1984), the court of appeals employed a different explanation of custody in a case involving a "detainer." The detainer was issued by Winnebago County against a person being held in Fond du Lac County. Demars was jailed on February 9, 1983, in Fond du Lac County solely on Fond du Lac County crimes. *Id.* at 21. On the same date, a probation hold was placed against him for absconding from probation. *Id.* A preliminary revocation hearing was held on March 10. *Id.* The following day, a fact-finder found probable cause for revocation and ordered that Demars be held in custody pending a final hearing on probation revocation. *Id.* All this happened in Fond du Lac County.

¶ 156. In the meantime, on February 22, 1983, the Winnebago County District Attorney filed unrelated criminal charges against Demars for Winnebago County crimes. *Id.* On February 25, the Winnebago County Sheriff's Department filed a "detainer" with Fond du Lac County, requesting that Fond du Lac County detain Demars if he should post bond and if his probation hold should be lifted. *Id.* Winnebago County subsequently made arrangements to bring Demars to Winnebago County, and Demars made his initial ap-

66

pearance there on May 2, 1983. *Id.* The Winnebago County court imposed $400 in cash bail, set a preliminary examination for May 18, and permitted Demars to be returned at once to Fond du Lac County. *Id.* at 21–22. When he was brought to Winnebago County a second time on May 18, Demars pled guilty and was sentenced to 33 months in prison.

¶ 157. The issue on appeal was whether Demars was entitled to sentence credit on the Winnebago County crimes for the period from February 25, when the Winnebago County detainer was filed, until May 18, the day Demars was sentenced—a total of 83 days. *Id.* at 22. The court of appeals said no, but it did award Demars credit for 17 days—May 2 through May 18—on his Winnebago County sentence. *Id.* at 20–21.

¶ 158. Public Defender Glenn Cushing argued on appeal that the issue was "whether the defendant's custody in the Fond du Lac County jail was 'in connection with the course of conduct for which sentence was imposed' in Winnebago County." He contended that Demars' status changed when Winnebago County filed the detainer, inasmuch as Demars was no longer in custody in Fond du Lac *solely* on Fond du Lac County charges, as Winnebago County had lodged a formal "hold" request that would take effect if Demars posted bond and if his probation hold was lifted.

¶ 159. The court of appeals did not rely on the escape statute to decide the case. It used Black's Law Dictionary, which defined "custody," in part, as "the detainer of a man's person by virtue of lawful process or authority." *Demars,* 119 Wis. 2d at 23 (quoting *Black's Law Dictionary* 347 (5th ed. 1979)). The court said:

A close analysis of all the cases cited by Demars shows the presence of a legal event, process or author-

ity which occasioned, at least in part, the custody of the defendant relative to the charge for which he was ultimately sentenced. We conclude that "custody" as used in sec. 973.155, Stats., must necessarily result from the occurrence of a legal event, process, or authority which occasions, or is related to, confinement on the charge for which the defendant is ultimately sentenced.

*Demars,* 119 Wis. 2d at 25–26.

¶ 160. The court explained:

Examples of lawful process or authority resulting in custody in a criminal case include arrest with or without a warrant, arrest upon a capias or bench warrant, unsatisfied bail requirements resulting in confinement, sentence to confinement, temporary detention pursuant to sec. 968.24, Stats., probation or parole holds, and periods of confinement imposed as a condition of probation.

*Id.* at 23.

¶ 161. A "detainer," the court said, did not meet this standard. "The term 'detainer' carries no custodial mandate in our jurisprudence." *Id.* at 24. Consequently, the court held, Demars was not in custody, within the meaning of the statute, until he was brought to Winnebago County and the court set bail. This constituted the "legal event" that changed his status in Fond du Lac County. *Id.* at 26.

¶ 162. The *Demars* analysis is very useful in establishing a second prerequisite of "custody." Carter's arrest in Chicago on a Wisconsin felony warrant was clearly the occurrence of a legal event, but it did not make Carter subject to prosecution under § 946.42 or any other Wisconsin statute for an escape from the Cook County Jail. *Demars* teaches that "custody" may depend on the existence of two elements: (1) a legal event, process, or authority that occasions, at least in

part; (2) a status that subjects a person to an escape charge under a Wisconsin statute for leaving that status.

¶ 163. That "custody" requires both elements was made clear in *State v. Magnuson,* 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536. Magnuson was subject to eight criminal charges. He was unable to post bond. *Id.,* ¶ 2. The court modified his bail to a $10,000 signature bond on each count, plus multiple other conditions of release, including a nightly curfew that confined him to the residence of his pastor between specified hours. *Id.,* ¶ 4. "This home detention as a condition of bond was not pursuant to an order from the sheriff or the Department of Corrections under Wis. Stat. § 302.425 (1997–98)." *Id.,* ¶ 5. The defendant was required to wear an electronic bracelet to ensure his presence in the pastor's home during curfew hours. *Id.,* ¶ 6.

¶ 164. After pleading no contest to three counts, the defendant sought sentence credit for the six months he resided with his pastor as a condition of his bond. *Id.,* ¶ 8. This court upheld the circuit court's denial of sentence credit. The court made the following statements:

> [N]umerous cases have interpreted the sentence credit statute and concluded that the plain meaning of custody under the statute corresponds to the definition of custody contained in the escape statute, Wis. Stat. § 946.42.
>
> . . . .
>
> [W]e determine that for sentence credit purposes an offender's status constitutes custody whenever the offender is subject to an escape charge for leaving that status.
>
> In establishing this definition, we modify the approach set forth in *Gilbert* in that we do not limit the

69

inquiry to the definition of custody contained only in Wis. Stat. § 946.42(1)(a). Instead, we acknowledge the importance of reading statutes in pari materia . . . and include for reference other statutory provisions *in which the legislature has classified certain situations as restrictive and custodial by attaching escape charges for an unauthorized departure from those situations.*

. . . .

*In sum, we determine that for purposes of sentence credit an offender's status constitutes custody whenever the offender is subject to an escape charge for leaving that status.*

*Id.*, ¶¶ 13, 25, 26, 31 (emphasis added).

¶ 165. It must be noted that the defendant in *Magnuson* was subjected to multiple court-ordered conditions of release occasioning his status, so that he met the standard set out in the *Demars* case. He did not get sentence credit, however, because he was not subject to an escape charge under any provision of Wisconsin law.

¶ 166. Patrick Carter was not "in custody" within the meaning of § 973.155 when he was confined in the Cook County Jail because he was not subject to an escape charge under any provision of Wisconsin law.[6] Holding that Carter's Chicago confinement fits within the terms of § 973.155(1) would rewrite more than three decades of interpretation and eliminate any jurisdictional or geographic limitation to statutory "custody."

¶ 167. This analysis immediately raises the question whether a person held in Illinois *solely* on a Wisconsin warrant would be entitled to sentence credit on a Wisconsin sentence related to the warrant. The

[6] *Cf. Herman v. Brewer*, 193 N.W.2d 540 (Iowa 1972).

answer is yes. The reason sentence credit would be required is explained in *Ballard v. Blackwell,* 449 F.2d 868, 869 (5th Cir. 1971):

> In interpreting § 3568 we are definitely committed to the position that time spent in State custody *must* be credited toward time served on a Federal sentence if the continued State confinement was exclusively the product of such action by Federal law-enforcement officials as to justify treating the State jail as the practical equivalent of a Federal one. *Davis v. Attorney General,* [425 F.2d 238 (5th Cir. 1970)]; *United States v. Morgan,* [425 F.2d 1388 (5th Cir. 1970)]. If the Federal detainer alone prevented Ballard's release from State confinement, credit must be given. Or, to state it affirmatively, if absent the Federal detainer and under available state procedures Ballard could have been released from the contemporary State confinement, credit must be given.

*Id.* (citation omitted).

¶ 168. Credit must be given in this hypothetical circumstance for a constitutional reason, not a statutory reason. *See Klimas v. State,* 75 Wis. 2d 244, 249 N.W.2d 285 (1977); *State ex rel. Solie v. Schmidt,* 73 Wis. 2d 76, 242 N.W.2d 244 (1976); *Kubart v. State,* 70 Wis. 2d 94, 233 N.W.2d 404 (1975). The law must "ensure that a person not serve more time than he is sentenced." *Floyd,* 232 Wis. 2d 767, ¶ 23 (citation omitted). Carter cannot rely on a constitutional argument because he was legitimately confined in Illinois for Illinois offenses that were unrelated to his offense in Wisconsin. He is seeking dual credit.

B. "In Connection With"

¶ 169. Determining that a defendant was "in custody" within the meaning of Wis. Stat. § 973.155(1) does not settle the issue of sentence credit. The court also

must determine whether all or part of the custody for which sentence credit is sought was "in connection with the course of conduct for which sentence was imposed."

¶ 170. There are numerous cases in which a defendant's request for sentence credit was denied on grounds that his custody was not "in connection with the course of conduct for which sentence was imposed." *See, e.g., Elandis Johnson,* 318 Wis. 2d 21; *Marcus Johnson,* 304 Wis. 2d 318; *Floyd,* 232 Wis. 2d 767; *Beets,* 124 Wis. 2d 372; *Tuescher,* 226 Wis. 2d 465; *State v. Beiersdorf,* 208 Wis. 2d 492, 561 N.W.2d 749 (Ct. App. 1997); *State v. Morrick,* 147 Wis. 2d 185, 432 N.W.2d 654 (Ct. App. 1988).

¶ 171. The *Elandis Johnson* case establishes that:

Wis. Stat. § 973.155 imposes no requirement that credit applied toward one sentence also be applied toward a second sentence if the basis for applying the same credit to both sentences is merely that the sentences are concurrent and are imposed at the same time. The fact that sentences are concurrent and are imposed at the same time does not alter the statutory mandate that credit toward service of a sentence be based on custody that is "in connection with" the course of conduct giving rise to that sentence: i.e., custody factually connected with the course of conduct for which sentence was imposed.

*Elandis Johnson,* 318 Wis. 2d 21, ¶¶ 3, 76.

¶ 172. The *Elandis Johnson* case pounds the necessity of a *factual connection* between custody and "the course of conduct for which sentence was imposed." *Floyd* emphasizes not only that a factual connection is necessary "for sentence credit . . . [but also that] *a procedural or other tangential connection will not suffice.*" *Floyd,* 232 Wis. 2d 767, ¶ 17 (emphasis added).

¶ 173. Three cases illustrate some of the principles at play in the "in connection with" clause. These cases all present some factual "connection" or relationship between "custody" on Crime A and sentence on Crime B, but not all lead to sentence credit.

¶ 174. At one end of the "in connection with" spectrum is *Beets*. Beets was on probation for two drug crimes when he was arrested on a burglary charge. *Beets*, 124 Wis. 2d at 374. Shortly afterward he was also in custody on a probation hold because of the alleged violation of his probation by virtue of the burglary. *Id.* at 374. About one month later, Beets' probation was revoked and later he was sentenced on the two drug crimes. *Id.* at 375. Beets was given credit on the drug sentence for his days in custody from his arrest on the burglary to his sentencing on the drug crimes. *Id.*

¶ 175. About six months later, Beets pled guilty to the burglary and was sentenced to a prison term that was to run concurrent with the previously imposed sentence on his drug crimes. *Id.* He was granted sentence credit on the burglary sentence for the period from his arrest to the date he began his prison sentence on the drug crimes. *Id.* But Beets wanted more and filed a post-conviction motion asking for credit for the period subsequent to his sentencing on the drug crimes up to his sentencing on the burglary. *Id.*

¶ 176. The circuit court denied his request. *Id.* at 376. This determination was affirmed by the court of appeals and this court. *Id.* Beets contended that his sentence on the burglary was "related" to all custody with respect to the drug crimes, inasmuch as his burglary arrest had triggered the revocation of his probation and his ultimate sentence on the drug crimes. *Id.* at 377.

¶ 177. This court disagreed. It concluded that "the sentence on the drug charges was not related or connected to the burglary course of conduct." *Beets,* 124 Wis. 2d at 378.

> [A]ny days spent in confinement after the revocation of probation and the imposition of sentence arise out of, and are connected not with the burglary, but the unrelated conduct which resulted in the drug convictions more than a year earlier. Thus, the offenses are not connected.

*Id.*

¶ 178. The court had to concede "a temporal connection . . . because it was the burglary arrest that triggered the probation hold on Beets." *Id.* But, it said, "any connection which might have existed between custody for the drug offenses and the burglary was *severed* when the custody resulting from the probation hold was converted into a revocation and sentence." *Id.* at 379 (emphasis added).

¶ 179. All confinement in the *Beets* case qualified as "custody" under *Floyd* principles and under *Demars* principles. But any "connection" between the drug crimes and the burglary was "severed" by Beets' sentence on the drug crimes.

¶ 180. At the other end of the "in connection with" spectrum is *State v. Thompson,* 225 Wis. 2d 578, 593 N.W.2d 875 (Ct. App. 1999). *Thompson* involved the revocation of a juvenile's aftercare supervision (or juvenile "parole") as a result of new offenses committed after the defendant's 18th birthday. *Id.* at 580. Thompson was arrested for operating a vehicle without the owner's consent, fleeing from an officer, and possession of marijuana. *Id.* At the time of these offenses, he was released on juvenile aftercare from confinement as a delinquent for multiple previous

offenses. *Id.* Following his arrest, Thompson made his initial appearance, the court set bail, a "hold" for violation of aftercare supervision was placed on Thompson, and he remained in adult custody. *Id.*

¶ 181. About a month later, Thompson's juvenile aftercare was revoked as a result of the new offenses. *Id.* Two months later, he pled to the adult criminal charges. *Id.* About three months later, he was sentenced on those charges. *Id.* Over the five-month period between revocation of juvenile aftercare and sentencing on the adult offenses, Thompson spent time in both a county jail and a juvenile correctional facility. *Id.* at 580–81. He was given credit for his time in county jail but not for his time at Ethan Allen. *Id.* at 581.

¶ 182. The denial of credit for the juvenile institution confinement was reversed by the court of appeals, which distinguished the situation in *Thompson* from the situation in *Beets. Id.* at 583–84. The court said, among several points, that revocation of aftercare was not a sentence; the duration of Thompson's juvenile custody was indefinite; the duration of juvenile custody was not shortened by credit for time spent in adult custody; and confinement in a secured juvenile facility was designed as treatment, not punishment. *Id.* at 584 n.2. Revocation of aftercare, the court said, represents a determination that new offenses require continuing treatment in a secured correctional facility. "Thompson's continuing confinement in the juvenile system was clearly and intimately related to the pending charge." *Id.* It constituted custody in the juvenile system, waiting for adult court disposition. *Id.*

¶ 183. In sum, the juvenile system custody after revocation was "in connection with the course of conduct for which sentence was imposed," and it required sentence credit.

¶ 184. The case of *Marcus Johnson* falls between *Thompson* and *Beets*. In June 2001 Marcus Johnson was committed to a secured juvenile institution after being found delinquent on multiple grounds. *Marcus Johnson,* 304 Wis. 2d 318, ¶ 11. His supervision was extended for a second year on May 20, 2002. *Id.* In June 2002 Johnson battered a fellow inmate and was charged for that offense in adult court. *Id.*, ¶ 12. He was released back to the juvenile institution on a signature bond. *Id.*, ¶ 13. The felony battery case was tried on February 27, 2003, and Johnson was convicted. *Id.*, ¶ 15. On May 6, 2003, the juvenile court extended Johnson's juvenile supervision for a third year. *Id.*, ¶ 16. He was not sentenced on the felony battery in adult court until February 2004. *Id.*, ¶ 21. The issue before this court was whether Johnson was entitled to 608 days of sentence credit on his battery sentence for *all* custody between the time of his arrest on the battery charge and his sentence on that charge. *Id.*, ¶ 32. Almost all confinement during this time period was in the juvenile institution.

¶ 185. The *Marcus Johnson* court reached the following conclusions: (1) Johnson's initial confinement in a secured juvenile institution was completely unrelated to the felony battery. *Id.*, ¶ 9. Moreover, the extension of his supervision for an additional year on May 20, 2002, was unrelated to the felony battery because the battery had not yet occurred. *Id.* (2) The extension of Johnson's supervision for a third year on May 6, 2003, was related to the felony battery because the juvenile court did factor the battery into its decision to extend supervision. *Id.* (3) However, the circuit court made a reasonable determination that there was an "extremely high probability" that Johnson's supervision would have been extended regardless of the June 2002 battery. *Id.*, ¶ 23.

¶ 186. This court said: "The issue . . . is how large a factor did the June 2002 battery have to play in the decision to extend Johnson's juvenile supervision in 2003 for Johnson's juvenile custody to be 'in connection with' the June 2002 battery." *Id.*, ¶ 67.

¶ 187. The court noted that the phrase "in connection with" was "subject to both a narrow and broad interpretation. *Id.*, ¶ 68. "*Beets* suggests that a narrower interpretation of the statute is appropriate." *Id.*, ¶ 69. Then the court added: "We stated that, from the time Beets began serving his sentence on the drug charges, it became irrelevant that he was also awaiting trial on the burglary charge." *Id.*

¶ 188. The court quoted and approved the following language from *Beets:*

> [T]hat any connection which might have existed between custody for the drug offenses and the burglary was severed when the custody resulting from the probation hold was converted into a revocation and sentence.
>
> From that time on, Beets was in prison serving an imposed and unchallenged sentence; and whether he was also awaiting trial on the burglary charge was irrelevant
>
> . . . .
>
> because [Beets'] freedom from confinement—his right to be at liberty—was not in any way related to the viability of the burglary charge. His ability to make bail on the burglary charge became immaterial. Even had the burglary charge been dismissed, he would still have been in confinement. Thus, there is no logical reason why credit should be given on the burglary charge for his service of sentence on a separate crime.

*Marcus Johnson,* 304 Wis. 2d 318, ¶¶ 44, 69 (quoting *Beets,* 124 Wis. 2d at 379) (citation omitted).

¶ 189. The *Marcus Johnson* court went on to say:

The underlying purpose of the sentence credit statute is to afford fairness by ensuring "that a person not serve more time than that for which he is sentenced." A narrow interpretation of the phrase "in connection with" furthers this purpose. If Johnson would have been in custody *even if* the June 2002 battery had never occurred, he is not being treated unfairly by not receiving sentence credit for that time.

. . . .

We . . . affirm the circuit court's finding that Johnson would have been in custody *even if* the June 2002 battery had not occurred. This finding is not clearly erroneous. It is amply supported by the record. . . . Johnson's time spent in juvenile custody was not in connection with the June 2002 battery, and he is not entitled to sentence credit under Wis. Stat. § 973.155 for the entire 608 days he spent in custody after his arrest awaiting adult sentencing.

*Id.*, ¶¶ 70, 76 (emphasis added).

¶ 190. All of Marcus Johnson's custody, like Beets' custody, satisfied the requirements set forth in *Floyd* and *Demars*. But part of his custody had no connection to his battery offense, while another part was deemed irrelevant because he would have been in custody "even if the June 2002 battery had never occurred." *Id.*, ¶ 70.

¶ 191. This analysis is a second way of evaluating Carter's confinement in Chicago.

¶ 192. Judge McMahon found that Carter was arrested in Chicago on December 13, 2003, "on a probation violation warrant from Illinois and on the Wisconsin warrant." Accepting this as fact, it is undisputed that the Illinois warrant set bail at $5,000. Existence of a Wisconsin warrant firmed up the preex-

isting Illinois warrant because it indicated an additional violation of the conditions of Carter's release.

¶ 193. Carter appeared before an Illinois judge on December 15 on the Wisconsin warrant. The record does not tell us whether bail was set or denied. According to the record, however, the standard practice in Chicago is for law enforcement authorities to check on local charges before taking an extradition case before a judge. It is inconceivable that law enforcement authorities did not know anything about the robbery at the time they took Carter before a judge. *Carter's own evidence says they knew. See* ¶ 125 n. 1, *supra.* It cannot be disputed that authorities knew about the probation violation warrant, the $5,000 bond on that warrant, and Carter's need to satisfy his local obligations for violating supervision before being shipped off to Wisconsin.

¶ 194. When Carter's probation was revoked on December 15 and he was sentenced to 30 days in jail, *less three days of sentence credit,* his sentence *severed* any connection between his confinement and the Wisconsin warrant.

¶ 195. Before Carter's confinement in the jail could be "reconnected" to the Wisconsin warrant, he was arrested on the robbery. He eventually appeared in court on the robbery. Logic, experience, and common sense tell us that the court set conditions of release that Carter could not meet. *It was Carter's burden to establish otherwise.*

¶ 196. Carter might have chosen to fight extradition by not posting bond in the robbery case, or he might not have been able to post bond, but Judge McMahon found *as a fact* that "Defendant could not agree to extradition because he had a pending local charge and that local charge had to be resolved before

he could be sent back to Wisconsin."[7] This court is bound by that finding because it is not clearly erroneous.

¶ 197. In addition, Carter would have been arrested *even if* there had been no Wisconsin warrant.

¶ 198. Carter was on a $5,000 bond for an Illinois offense *before* he appeared in court on the Wisconsin warrant.

¶ 199. Carter's sentence on the DUI *severed* any connection between his confinement and the Wisconsin warrant.

¶ 200. Carter was charged with armed robbery *before* his DUI sentence expired.

¶ 201. If Carter was denied bail on the Wisconsin warrant, the denial served the acknowledged interests of Illinois at least as much as the interests of Wisconsin. The robbery charge and the unknown conditions of release on the robbery superseded and overwhelmed the effect of the Wisconsin warrant. *Even if* bail had been set on the Wisconsin charge and had been posted,

---

[7] On August 30, 2005, Patrick Carter entered a guilty plea on the reckless endangerment charge. In a colloquy with Milwaukee County Circuit Judge Mel Flanagan and others, Carter was asked how he had handled extradition. There is some ambiguity in the record about whether Judge Flanagan was speaking of extradition in 2003 before Carter's Illinois conviction or extradition in 2005 when Carter was in prison. The State said, "I think he pretty much waived extradition; is that correct?" Carter answered, "No, I had another case." Carter's defense attorney then interjected: "He [Carter] says they wouldn't let 'em, because he had another case, he was—you were incarcerated." Carter replied, "Right." This discussion makes more sense with reference to 2003 than 2005. Carter did not have "another case" in 2005. He was already in prison because of his 2004 conviction.

it would not have mattered. Carter's waiver or refusal to waive extradition was irrelevant because Illinois would not have permitted Carter to leave Illinois under any circumstances until the charges against him had been resolved. As a result, he received 305 days of credit for his presentence confinement against his Illinois robbery sentence.

¶ 202. In any event, Carter deliberately delayed his return to Wisconsin by fighting the robbery charge from December 19 to October 19—ten months. This squares with Judge McMahon's findings.

¶ 203. Carter cannot satisfy the requirement that his days of confinement in the Cook County Jail were "in connection with the course of conduct for which sentence was imposed" if this court follows the principles stated in *Beets* and *Marcus Johnson.*

## VI

¶ 204. Carter's case is the embodiment of the hypothetical example set out in the special materials:

> 4. detention in another state based on an offense committed in that state, even if a Wisconsin warrant or detainer has also been filed.

¶ 205. The example *denying* sentence credit is the flip side of the example *requiring* sentence credit:

> 4. detention in jail in another state when that detention results *exclusively* from a Wisconsin warrant or detainer. (Emphasis added.)

¶ 206. As noted above, the Criminal Jury Instructions Committee provided the following explanation for its examples of out-of-state confinement:

81

4. [1] Credit should be granted when, for example, a Wisconsin parolee is arrested in Illinois solely because of a Wisconsin warrant. [2] Credit should not be granted when a Wisconsin parolee, already in custody on Illinois charges, has a Wisconsin hold or warrant filed against him. [3] This is consistent with the conclusion that filing a detainer against one already in custody in Wisconsin does not result in "custody" under § 973.155 on the charge which is the subject of the detainer.

¶ 207. The court of appeals asserted that the *Demars* and *Nyborg* cases do not support "the proposition that a person detained in jail in another state is not 'in custody in connection with' under Wis. Stat. § 973.155 unless the person is in custody exclusively pursuant to a Wisconsin warrant." *Carter,* 306 Wis. 2d 450, ¶ 13. The court of appeals went on:

Section IIIA(4) read together with the footnote references to *Demars* and *Nyborg* suggests that the detainer in those cases did not trigger sentence credit because the defendants were already in custody. However, that is not correct. As we explained in *Demars,* a "detainer" . . . simply notifies the jurisdiction in which the defendant is confined that 'his [or her] custody [is] desired elsewhere.' " We specifically distinguished between a detainer and a warrant for an arrest (and other lawful means of arrest). . . . [T]here is nothing in either *Demars* or *Nyborg* that supports the proposition that, if a defendant in custody in another state both because of an arrest under the law of the state and under a Wisconsin warrant, the defendant is not "in custody" under the Wisconsin warrant for purposes of Wis. Stat. § 973.155.

*Id.,* ¶ 18.

¶ 208. The third sentence of the committee's comment is *factually* correct. The committee did not overstate its reliance on the two cases when it said that

82

*Demars* and *Nyborg* were "consistent with" the statement that "credit should not be granted when a Wisconsin parolee, already in custody on Illinois charges, has a Wisconsin hold or warrant filed against him." *See* ¶ 145, *supra.*

¶ 209. The committee is clearly correct with respect to detainers based on the facts of *Demars.* The committee also is correct with respect to the mere existence of an arrest warrant. *State v. Villalobos,* 196 Wis. 2d 141, 537 N.W.2d 139 (Ct. Ap. 1995), is helpful in making this point. The court in *Villalobos* said:

> Distinguishing *Demars,* Villalobos argues that here an arrest warrant with cash bail and complaint had been issued. We disagree that the difference in the form of the legal process changes the result. The teaching of *Demars* is that the mere existence of legal process does not, in and of itself, trigger custody. *Demars* offered some examples of custody which would qualify for sentence credit. *Id.* at 23. In a situation involving an arrest warrant, *Demars* did not say that the mere existence of the warrant was sufficient. Rather, *Demars* said that an *arrest* was necessary. *See id.* Thus, *Demars* requires that the process be accompanied by some legal event or occurrence which "occasions, or is related to, confinement" on the charge referenced in the process. *Id.* at 26.
>
> Villalobos argues that he has shown this linkage because the Racine County jail records listing the various reasons for his custody include a reference to the Kenosha County charge in this case. We disagree that this kind of entry in a jail log demonstrates an "occurrence of a legal event, process, or authority" within the meaning of *Demars. See id.* Like the detainer in *Demars,* all this entry connotes is Racine County's awareness that Kenosha County had an outstanding warrant for Villalobos's custody.

*Id.* at 147–48 (citation omitted).

¶ 210. The record in the present case indicates that Carter *was* arrested *simultaneously* on two warrants, including the arrest warrant from Wisconsin. This makes the case closer in theory than a case in which an arrest warrant is issued for a person who is already in custody, either in another Wisconsin county or in another state.

¶ 211. In Wisconsin, when a court in one county issues an arrest warrant for a person who is in custody in another county, the person is not re-arrested and brought before a judge in the county where he is confined. Rather, the arrest warrant serves the same purpose as a detainer. The county issuing the arrest warrant does not acquire "custody" of the person until it issues a writ and brings the person before its court.

¶ 212. In this case involving an out-of-state arrest on two different warrants, the felony arrest warrant from Wisconsin, the Illinois fugitive warrant, and the subsequent demand for requisition from the governor of Wisconsin were all functionally equivalent to a detainer—a notice to the Cook County Jail that Carter's presence was desired in Wisconsin. Strong language is used in the governor's requisition demand, but Wisconsin had no way to enforce that demand as long as Illinois had legitimate local matters pending. Illinois would not permit Carter to waive extradition until Illinois resolved its local charge. The situation would have been completely different if the Wisconsin arrest warrant and subsequent documents had been the *exclusive* reason for holding Carter.

¶ 213. This court must look beyond the technicalities of various legal instruments to understand what actually happened in Carter's case. If Wisconsin were required to give Carter and similarly situated persons sentence credit in situations where this state is power-

less to bring those persons to Wisconsin and powerless even to speed up the process in a sister state, the state could be stripped of the ability to effectively enforce its own criminal laws. Courts must not reward a person with dual credit for committing crimes in Wisconsin and then fleeing to a jurisdiction where the person is already wanted for other crimes or where the person may commit new crimes.

¶ 214. The court of appeals also dismissed the Criminal Jury Instructions Committee's reliance on *Rohl*. The court said:

> *Rohl* does not support the proposition that a defendant is not in custody in connection with a Wisconsin charge for purposes of Wis. Stat. § 973.155 if detained in another state "based on an offense committed in that state, even if a Wisconsin warrant or detainer has been filed." WIS JI—CRIMINAL SM-34A at p.6. The reason sentence credit was denied in *Rohl* was that the California and the Wisconsin post-parole revocation sentences were not concurrent; the reason was not that confinement in California did not result "exclusively from a Wisconsin warrant or detainer." Wis. JI—Criminal SM-34A at p.5.

*Carter,* 306 Wis. 2d 450, ¶ 22.

¶ 215. In *Rohl,* the defendant was released on parole in Wisconsin after serving time on two offenses including a homicide. *Rohl,* 160 Wis. 2d at 327. He was permitted to go to California where his parole was to be supervised. *Id.* at 328. Before the transfer of parole had been accomplished, Rohl was arrested and jailed in California on new crimes. This happened on November 24, 1986. *Id.* The Wisconsin Division of Corrections issued a parole violation *warrant* against Rohl on November 26, 1986. *Id.*

¶ 216. Rohl was convicted of the California offenses on September 15, 1987, and sentenced on Janu-

ary 28, 1988. *Id.* at 328. He was granted 431 days of sentence credit on his four-year California prison sentence: namely, the period between his November 24, 1986, arrest and his January 28, 1988, sentence. *Id.*

¶ 217. Upon completion of his sentence in California, Rohl was returned to Wisconsin where a hearing examiner revoked his parole and effectively imposed a three-year sentence by determining that Rohl should forfeit three years of accumulated good time on his previous sentence. Rohl demanded "sentence" credit for all time spent in custody in California. *Id.*

¶ 218. The decision of the hearing examiner granted "custody credit" from April 20, 1989, when Rohl was placed "in custody solely as a result of his Wisconsin detainer," until he was received at the Wisconsin institution. The examiner said that the time Rohl served in California after his arrest until April 20, 1989, "will not be granted as custody credit as he was not being held solely as a result of the Wisconsin detainer." The circuit court affirmed this determination, stating that Wis. Stat. § 973.155 has been "interpreted to be a mirror image of the federal statute and we find a reluctance in courts to grant a dual credit in these situations where an individual's in-custody status may reasonably and arguably be attributed to two separate and distinct crimes."

¶ 219. The court of appeals affirmed on the grounds that "Rohl's credit request constitutes impermissible double credit against two non-concurrent sentences." *Rohl,* 160 Wis. 2d at 327. The court said: "So-called 'dual credit'—where an offender can receive credit for a single episode of jail time toward two (or more) sentences—will be granted only for sentences which are *concurrent.*" *Id.* at 330. In fact, this statement neither asserts nor implies that dual credit *must* be afforded on all concurrent sentences.

¶ 220. In reaching its decision, the *Rohl* court did not criticize the hearing examiner or the circuit court, nor did it say that a concurrent sentence *must* result in dual credit. It approvingly cited *Boettcher,* where the court noted that the "federal courts are firm and unanimous that there shall be no dual credit for the same presentence time served." *Boettcher,* 144 Wis. 2d at 95. *Boettcher* also indicates that § 973.155 gives courts "power to give dual credit in appropriate cases," *id.* at 99–100, namely, "when a new sentence is imposed to run concurrently with a revoked probation." *Id.* at 100 n.4. *See* Wis. Stat. § 973.155(1)(b).

¶ 221. A careful review of *Rohl* shows that it was not misread by the Criminal Jury Instructions Committee. *Rohl*'s reference to concurrent sentences has been taken too far.

¶ 222. One case that generated confusion about sentence credit and concurrent sentences was *State v. Ward,* 153 Wis. 2d 743, 452 N.W.2d 158 (Ct. App. 1989). In *Ward,* the circuit court sentenced the defendant to indeterminate terms of three years incarceration on each of three drug convictions. The court made the three sentences concurrent with each other but gave the defendant 233 days of sentence credit on only one of the three sentences. The court of appeals reversed, saying:

> Applying pre-sentence credit against only one of the concurrent three-year terms defeats the concurrent nature of the sentence because the first term is reduced to two years and 132 days, while the remaining two terms stand at three full years. Thus, implementation of the concurrent sentences imposed by the trial court requires that the 233–day credit be applied against each of the concurrent three-year terms.

*Id.* at 745 (footnote omitted).

¶ 223. Subsequent court decisions interpreted the *Ward* language as requiring identical sentence credit on *all* concurrent sentences imposed at the same time. This principle was shattered in *State v. Elandis Johnson,* 2008 WI App 34, 307 Wis. 2d 735, 746 N.W.2d 581, *aff'd* 2009 WI 57, 318 Wis. 2d 2, 767 N.W.2d 207, where the court of appeals showed that Ward's presentence custody was exactly the same in all three drug cases, which required that the same sentence credit be given in all three cases.

¶ 224. When this court reviewed *Elandis Johnson,* it unanimously affirmed the court of appeals' clarification of *Ward.* It also drew on supportive language in the special materials, *see Elandis Johnson,* 318 Wis. 2d 21, ¶ 63 (explaining that there will be situations when the periods of time for which credit is due on unrelated concurrent sentences will not line up with each other) (citing Wis. JI—Criminal SM-34A, at 12). The resulting principles of law are quoted in *Elandis Johnson,* 318 Wis. 2d 2, ¶ 66.

¶ 225. In sum, the court of appeals in this case was misled about the facts. It was not informed about and did not examine federal law interpreting 18 U.S.C. § 3568. It did not fully appreciate the bases for the examples in the special materials. It misread *Marcus Johnson,* and it did not have the benefit of the two *Elandis Johnson* decisions, explaining *Ward* and the relationship between sentence credit and concurrent sentences.

## VII

¶ 226. The majority opinion attempts to straighten out the factual discrepancies between Judge McMahon's findings and the facts set out by the court of appeals. However, there is no way to sugarcoat the

failure of the parties to submit the complete facts to Judge McMahon. The parties did not advise the circuit court about what conditions of release, if any, were set by Illinois courts on the Wisconsin warrant nor on the Illinois robbery. This serious failure was disrespectful to the court because it has deprived us of critical information that we requested.

¶ 227. With respect to the law, the majority opinion relies on the incorrect analysis of the court of appeals and a mistaken interpretation of the *Elandis Johnson* case to award Carter 305 days of credit on his Wisconsin sentence for virtually all of his presentence confinement in Illinois. Under the majority's mistaken interpretation of *Elandis Johnson,* it appears that Carter would be eligible for 305 days of sentence credit even if his Wisconsin sentence were consecutive to his Illinois sentence. At the same time, the opinion denies Carter any credit for the "actual days in custody" in Wisconsin awaiting a trial on the Wisconsin charge.

¶ 228. This dissent has previously addressed the court of appeals' legal analysis, but the *Elandis Johnson* case requires separate comment.

¶ 229. The *Elandis Johnson* case stands, in part, for the proposition that Wis. Stat. § 973.155(1) does not provide sentence credit for time in custody that is not related, or is only procedurally related, to the matter for which sentence was imposed. *Elandis Johnson,* 318 Wis. 2d 21, ¶ 45. That is why Johnson lost. He could not show a factual connection between "the four days of presentence custody in 2004 and the course of conduct for which the sentences in the 2005 case were imposed." Nor could he show "a factual connection between the 50 days of presentence custody in 2005 and the course of conduct for which the sentence in the first 2004 case was imposed." *Id.,* ¶ 49. Thus, Johnson moved to a

*legal* argument that when a defendant receives concurrent sentences on different offenses and those sentences are imposed at the same time, the defendant is entitled to the same sentence credit on all concurrent sentences, irrespective of whether he was in custody in connection with the course of conduct for which a particular sentence was imposed. The court *unanimously* rejected that contention.

¶ 230. In applying Wis. Stat. § 973.155 to the facts in *Elandis Johnson,* this court repeatedly emphasized that sentence credit must be based on "custody" that is *factually connected* to the course of conduct for which sentence was imposed. A factual connection is a prerequisite. The court did not say, however, that once a defendant shows *some* factual connection between confinement and the course of conduct for which sentence was imposed, he automatically earns sentence credit.

¶ 231. A defendant must establish, first, that he was "in custody" within the meaning of the statute, satisfying the tests in both *Floyd* and *Demars*. He then must show that the "custody" for which he claims credit is not only factually related, but also is not "precluded," or "severed," or made irrelevant by other facts or legal process. Here, we should ask how large a factor the Wisconsin warrant was in the decision to arrest Patrick Carter and keep him in custody from December 13, 2003, to October 19, 2004.

¶ 232. The majority is correct in recognizing that Carter is not entitled to sentence credit in Wisconsin for the time he spent in custody in Illinois on his sentence for DUI. He was sentenced to 30 days. He served only nine days, which included three days of credit, including the day his probation was revoked. He was on

90

$5,000 bail until he was revoked. Carter is not entitled to credit for any of those nine days on his Wisconsin sentence.

¶ 233. The majority is also correct that Carter is not entitled to credit for any confinement in Illinois after his October 19, 2004, sentence on the Chicago robbery. This is standard analysis under *Beets*.

¶ 234. What the majority fails to appreciate is that Carter's confinement in the Cook County Jail between December 19, 2003, and October 19, 2004, is grounded almost entirely upon Illinois' insistence that he be present for his trial on the robbery. Carter had committed a serious, violent crime in Chicago. He was already a convicted felon who had once "beat[en]" a homicide charge in Cook County. He had violated the conditions of supervision on his DUI and been on the lamb for more than a year before he was picked up. When he was arrested, he was carrying a gun. Yes, Wisconsin wanted him, but Wisconsin would have to wait until Illinois "finish[ed] that local charge." According to Judge McMahon, Carter "could not agree to extradition because he had a pending local charge and that local charge had to be resolved before he could be sent back to Wisconsin."

¶ 235. Carter failed to establish that his detention in Illinois resulted exclusively from a Wisconsin warrant or detainer. Had he provided such evidence, he would have been entitled to credit for every day of such confinement. In fact, Carter's own evidence—the *Townsend* transcript, the affidavits of his own investigator, and his own statements in court—establish that Illinois would not have permitted Carter to leave Illinois because of the pending robbery charge. Thus, he is entitled to zero credit in Wisconsin for his Illinois

confinement. The Wisconsin paperwork played virtually no part in Carter's continuing 10–month confinement.

¶ 236. In 2005 Carter was brought to Wisconsin for trial on the Wisconsin charge. At that time, he was unquestionably in Wisconsin "custody." He was awaiting trial on the Wisconsin charge for which he was sentenced. Carter was entitled to credit for all his presentence confinement in Wisconsin because he would not have been in a Wisconsin jail awaiting trial except for the Wisconsin charge. This credit would comply with the statute and in no way affect his sentence in Illinois.

¶ 237. The majority opinion is legally mistaken in many ways, but it is also problematic because it is likely to inspire countless motions for additional sentence credit based upon the new principles of law announced in the opinion.

¶ 238. For the reasons stated, I respectfully dissent.

¶ 239. ANNETTE KINGSLAND ZIEGLER, J. (*dissenting*). I dissent from the majority opinion, which awards the defendant 305 days of sentence credit on a Wisconsin sentence for time spent in Illinois custody on an Illinois criminal charge. I fear that the majority opinion confuses sentence credit and misplaces the burden of proof that properly lies with the defendant. In addition, the majority asserts that its sentence credit analysis applies only with respect to concurrent sentences, *see* majority op., ¶ 6 ("hop[ing] [the majority] ha[s] provided greater clarity in awarding sentence credit in a case involving concurrent sentences"), but then fails to explain how or why its analysis would not apply to consecutive sentences. While the majority

proclaims that it clarifies the law, it actually muddles the sentence credit issues with which trial courts are routinely confronted. Apparently the majority cabins its analysis to the unique facts of this case. The majority's lack of analysis with respect to sentence credit due for related versus unrelated charges and concurrent versus consecutive sentences is telling. The majority opinion must be intended to apply only to a future case where a defendant is in custody out of state on charges in both that state and Wisconsin, and a Wisconsin court later pronounces a concurrent sentence to one imposed in the other state, and the exact same credit is due in each. These facts are unique indeed.

¶ 240. On July 23, 2003, the defendant was charged with first-degree recklessly endangering safety in violation of Wis. Stat. § 941.30(1). On that same date, a felony warrant and authorization for extradition was executed in Wisconsin for the defendant on the above charge. On December 13, 2003, the defendant was arrested in Chicago, Illinois. The arrest report lists both the Wisconsin warrant and an outstanding Illinois warrant for probation violation. The defendant remained in Illinois custody until June 1, 2005, when he was conveyed to Milwaukee County pursuant to the Interstate Agreement on Detainers. On August 30, 2005, the defendant pled guilty to first-degree recklessly endangering safety and was sentenced to twelve-and-a-half years of imprisonment, comprised of seven-and-a-half years in initial confinement and five years on extended supervision—imposed concurrently with the defendant's existing sentence in Illinois. The circuit court granted the defendant's request for 91 days credit, which the State and defense attorney stipulated to as it comprised

93

the period between his initial appearance in Milwaukee County (June 1, 2005) and his sentencing in Milwaukee County (August 30, 2005).

¶ 241. Ten months later, on June 29, 2006, the defendant filed a post-conviction motion in Milwaukee County seeking 324 days of sentence credit representing the time he spent in Illinois custody between the date of his arrest in Illinois and the date of his sentencing on the Illinois charge. The circuit court denied the defendant's motion for 324 days of sentence credit; however, the circuit court granted the defendant an additional credit of six days for a total of 97 days of sentence credit. This adjusted amount included the period between the defendant's arrest in connection with the Wisconsin charge (May 26, 2005) and his sentencing on that charge (August 30, 2005).

¶ 242. As the utterly deficient record in this case makes clear, the most appropriate time to determine sentence credit is at the sentencing itself. Four-and-a-half years later, the majority finds itself drawing assumptions from next to no records detailing the defendant's custody in Illinois. I decline to join the majority's award of 305 days of sentence credit to a defendant who failed to present any Illinois court records proving that he was "in custody" in Illinois "in connection with the course of conduct for which sentence was imposed" in Wisconsin. *See* Wis. Stat. § 973.155(1)(a). For that reason, I respectfully dissent.

¶ 243. The defendant now seeks credit for time spent in presentence custody in Illinois from the day of his arrest in Illinois (December 13, 2003) until his sentencing on the Illinois charge (October 19, 2004). The defendant claims that this presentence custody was both "in connection with the course of conduct for which sentence was imposed" in Wisconsin, Wis. Stat.

94

§ 973.155(1)(a), as well as in connection with the robbery charge in Illinois. However, merely because the defendant was initially brought to court in connection with a Wisconsin charge, if that indeed happened in this case, does not mean that he deserves credit for time spent in Illinois custody absent proof that he was held in custody on the Wisconsin charge. The record is devoid of any proof that the defendant was held in Illinois on cash bail or otherwise because of the Wisconsin charge. The defendant fails to provide official court records which would prove that Illinois filed a fugitive complaint or held an extradition proceeding based upon the Wisconsin warrant. At best, it seems that the defendant was ultimately returned on a detainer, for which it is clear that no sentence credit is due.

¶ 244. I agree with the majority that Wis. Stat. § 973.155(1)(a) provides for sentence credit "for all days spent in custody in connection with the course of conduct for which sentence was imposed." Despite the majority sidestepping the issue, the statute indeed requires that the defendant be "in custody" "in connection with" the Wisconsin charge. *See id.; State v. Johnson*, 2009 WI 57, ¶ 27, 318 Wis. 2d 21, 767 N.W.2d 207 (explaining that § 973.155(1)(a) requires two determinations: whether the defendant was in custody and whether the custody was in connection with the course of conduct for which sentence was imposed). The "in connection with" language has a nexus with the "in custody" language, which tethers the defendant's in-custody status to a specific charge. *See Johnson*, 318 Wis. 2d 21, ¶¶ 32–33. For example, in *State v. Beiersdorf*, 208 Wis. 2d 492, 498–99, 561 N.W.2d 749 (Ct. App. 1997), the court of appeals declined to grant the defendant 44 days of sentence credit against his sexual assault sentence for time spent in presentence custody

resulting from a bail jumping charge, despite the bail jumping charge arising out of a violation of the defendant's personal recognizance bond on the sexual assault charge. The court of appeals explained:

> [B]ecause Beiersdorf posted a personal recognizance bond on the felony sexual assault charge and remained on that bond until his sentencing, and because he was in custody on cash bail only on the subsequent bail jumping and sexual intercourse charges, the forty-four days in custody, under § 973.155(1)(a), Stats., was 'custody' only 'in connection with the course of conduct for which sentence was imposed' and stayed on the bail jumping.

*Id.* In other words, there was no factual connection between the presentence custody and the sentence imposed on the sexual assault charge, "despite the obvious procedural connection between the bail jumping charge and the original sexual assault charge: i.e., without the sexual assault charge there would have been no personal recognizance bond, and thus, no bail jumping." *Johnson,* 318 Wis. 2d 21, ¶ 35 (citing approvingly the court of appeals' analysis in *Beiersdorf*). I fear that the majority today has blurred the clear distinction that has heretofore existed as to when sentence credit is due and when it is not. The "in custody in connection with" language of § 973.155(1)(a) has never been interpreted to require only that law enforcement have knowledge of an outstanding warrant. In this case, sentence credit for being in custody on an Illinois charge should not be awarded to the defendant who has shown merely that a police report suggests that law enforcement knew about an outstanding Wisconsin warrant at the time he was initially arrested in Illinois. The burden of proving both the "in custody" status and its connection with the course of conduct for which the

96

Wisconsin sentence was imposed rests with the defendant. *State v. Villalobos,* 196 Wis. 2d 141, 148, 537 N.W.2d 139 (Ct. App. 1995). Here, the defendant has failed to meet his burden.

¶ 245. In *State v. Villalobos,* the court of appeals held that Villalobos was not entitled to sentence credit because he failed to meet his burden of demonstrating that the custody for which he sought credit was in connection with the charge he was sentenced on. *Id.* At the time of his arrest in Racine County for possession of a controlled substance, Villalobos was the subject of an outstanding Kenosha County warrant and complaint for a charge of injury by conduct regardless of life. *Id.* at 145. Following his sentence on the Racine County drug matter, Villalobos was transferred to Kenosha County, where he was eventually convicted as a habitual criminal of recklessly endangering safety and sentenced to 40 months in prison. *Id.* Villalobos claimed that he was entitled to sentence credit for the days he spent in presentence custody in Racine County.[1] *Id.* at 146. The court of appeals disagreed. *Id.* at 148.

¶ 246. Quoting *State v. Demars,* 119 Wis. 2d 19, 26, 349 N.W.2d 708 (Ct. App. 1984), the *Villalobos* court ruled that "the custody for which credit is sought

---

[1] Following Villalobos's conviction for possession of a controlled substance, the Racine County Circuit Court placed him on probation for 18 months and ordered him to serve 30 days in jail as a condition of probation. *State v. Villalobos,* 196 Wis. 2d 141, 144, 537 N.W.2d 139 (Ct. App. 1995). Villalobos was credited with 53 days of presentence custody. *Id.* Because the credit of 53 days was in excess of the 30 days imposed as a condition of probation, Villalobos did not have to serve any further time on the drug matter. *Id.* It was those remaining 23 days of "excess" Racine County presentence custody for which Villalobos sought credit against the Kenosha County sentence. *Id.* at 146.

'must . . . result from the occurrence of a legal event, process, or authority which occasions, or is related to, confinement on the charge for which the defendant is ultimately sentenced.' " 196 Wis. 2d at 146. The court of appeals rejected Villalobos's argument that under the *Demars* test, his Racine County custody was sufficiently related to or "in connection with" the Kenosha County arrest warrant and complaint. *Id.* at 146–48.

¶ 247. As the *Villalobos* court explained, in *Demars,* the defendant sought credit against a Winnebago County sentence for time spent in presentence custody served in Fond du Lac County relating to a Fond du Lac probation revocation proceeding. *Id.* at 146–47 (citing *Demars,* 119 Wis. 2d at 21). The Winnebago County Sheriff's Department filed a detainer with Fond du Lac County, requesting that Fond du Lac County detain Demars should he post bond and have his probation hold lifted. *Demars,* 119 Wis. 2d at 21. The court of appeals held that Demars was not entitled to sentence credit against the Winnebago County sentence because the detainer did not occasion Demars' custody on the Winnebago County charge for which he was sentenced:

> The communication by the Winnebago County authorities to the Fond du Lac County authorities did not occasion the custody of Demars on the Winnebago County charges in any sense. Demars was not arrested based upon the communication, nor, based on the record before [the court of appeals], was bail set or any bail information conveyed.

*Id.* at 26.

¶ 248. According to the *Villalobos* court, "[t]he teaching of *Demars* is that the mere existence of legal process does not, in and of itself, trigger custody." 196 Wis. 2d at 147. The process must "be accompanied by

some legal event or occurrence which 'occasions, or is related to, confinement' on the charge referenced in the process." *Id.* (quoting *Demars,* 119 Wis. 2d at 26). Accordingly, the mere existence of an arrest warrant, like in Villalobos's case, is not sufficient to trigger custody. *Id.*

¶ 249. Villalobos argued that the Racine County jail records demonstrated the necessary link under the *Demars* test, as a reference to the Kenosha County charge was included in a list of the various reasons for his custody. *Id.* The court of appeals rejected his argument that the jail log entry demonstrated an " 'occurrence of a legal event, process, or authority' within the meaning of *Demars.*" *Id.* at 147–48 (quoting *Demars,* 119 Wis. 2d at 26). "Like the detainer in *Demars,* all this entry connote[d] [was] Racine County's awareness that Kenosha County had an outstanding warrant for Villalobos's custody." *Id.* at 148. The court of appeals noted that the record was silent as to the reason for Villalobos's arrest in Racine County. *Id.* Accordingly, the court of appeals denied Villalobos sentence credit for time spent in presentence custody in Racine County, concluding that "[w]hat is lacking is sufficient evidence demonstrating that Villalobos's initial arrest was based on the Kenosha County warrant or that the warrant was ever executed against Villalobos during his Racine County custody." *Id.*

¶ 250. In this case, the defendant has introduced no proof that he was arrested and held in custody in Illinois on the Wisconsin charge of first-degree recklessly endangering safety. Simply stated, this far after the fact, the record is woefully inadequate with respect to what credit should be due the defendant. The majority awards the defendant sentence credit based on pure speculation. As was the case in *Villalobos,* the record

lacks any sufficient evidence demonstrating that the Wisconsin warrant was ever even executed against the defendant during his Illinois custody. *See id.* While the arrest report documenting the defendant's arrest in Chicago, Illinois may list both an Illinois probation violation warrant and a Wisconsin warrant, the fact that the Wisconsin warrant was listed in the arrest report does not alone sufficiently demonstrate that the defendant was subsequently held in custody in Illinois on the Wisconsin charge. There are no court records to indicate that bail was set for the defendant's Wisconsin case in Illinois or that he was in custody on the Wisconsin charge. Instead, it is apparent that the defendant was held in Illinois to answer to an Illinois criminal charge.

¶ 251. Even assuming that the defendant was arrested in Illinois on the Wisconsin warrant, the record is void of any court records proving that Illinois filed a fugitive complaint or held an extradition proceeding. The record fails to contain any court documents or entries which would evidence that any case was filed or extradition proceeding held on the Wisconsin charge such that the defendant would be entitled to credit for being "in custody in connection with" the Wisconsin charge. *See* Wis. Stat. § 973.155(1)(a).

¶ 252. The holding of a defendant for extradition is not without certain requirements and protections. The Extradition Clause of the United States Constitution governs interstate extradition and provides that any person accused of committing an offense in one state, who flees to another state, must be returned to the state where the crime was committed upon request of that state's executive authority. U.S. Const. art. IV, § 2, cl. 2; 18 U.S.C. § 3182 (2006); *see also Black's Law Dictionary* 605 (7th ed. 1999). Section 14 of the Uni-

100

form Criminal Extradition Act, 11 U.L.A. 599 (2003), codified in Wisconsin at Wis. Stat. § 976.03(14) and in Illinois at 725 Ill. Comp. Stat. 225/14 (2009),[2] "permit[s] the police in one state, upon reasonable information that a person had committed a felony in another state, to arrest that person without a warrant when found in the asylum state." *State v. Hughes,* 68 Wis. 2d 662, 668, 229 N.W.2d 655 (1975). That arrest is "known as a prerequisition arrest and is for the purpose of holding the defendant until a governor's requisition warrant can be issued upon the demanding state's initiation of extradition proceedings." *Id.* Regardless of whether the arrest is made with a fugitive warrant, Wis. Stat. § 976.03(13); 725 Ill. Comp. Stat. 225/13, or without a fugitive warrant, § 976.03(14); 725 Ill. Comp. Stat. 225/14, a judge in the asylum state must issue a fugitive complaint, stating the grounds for the alleged fugitive's arrest. *See Hughes,* 68 Wis. 2d at 669. In this case, the record does not contain any such complaint, official documentation, or court case file entries.

¶ 253. Following the arrest and the issuance of the fugitive complaint, pursuant to Wis. Stat. § 976.03(15) and 725 Ill. Comp. Stat. 225/15, a judge in the asylum state must determine whether the appearing defendant is the person charged with committing the crime in the demanding state and whether the defendant is a fugitive from justice. *See Hughes,* 68 Wis. 2d at 669. If so, the judge must then issue a prerequisition warrant for the defendant's confinement pending the issuance of the governor's warrant from

[2] The cited statutory provisions in Wisconsin and Illinois, which codify the Uniform Criminal Extradition Act, are substantively identical. All references to the Wisconsin Statutes are to the 2007–08 version, and all references to the Illinois Statutes are to the 2009 version.

the demanding state. § 976.03(15); 725 Ill. Comp. Stat. 225/15; *Hughes,* 68 Wis. 2d at 669. Pending the governor's warrant, the defendant may be committed to county jail in the asylum state for a period not to exceed 30 days. § 976.03(15); 725 Ill. Comp. Stat. 225/15. The defendant may be released on bail by bond, so long as the defendant was not charged with a crime punishable in the demanding state by death or life imprisonment. § 976.03(16); 725 Ill. Comp. Stat. 225/16. If the governor's warrant is still not received, commitment or bail may be extended up to 60 days. § 976.03(17); 725 Ill. Comp. Stat. 225/17. Again, in this case, no such prerequisition warrant or extradition case file entries exist in the record before us.

¶ 254. In fact, we are not presented with any Illinois court records which would prove that the extradition proceeding, mandated by the Uniform Criminal Extradition Act and codified at Wis. Stat. § 976.03 and 725 Ill. Comp. Stat. 225, actually took place in this case. *See State ex rel. Ehlers v. Endicott,* 188 Wis. 2d 57, 63, 523 N.W.2d 189 (Ct. App. 1994) ("The aim of interstate extradition is to [] provide a summary and mandatory proceeding." (citing *Michigan v. Doran,* 439 U.S. 282, 288 (1978))). The majority concludes that based upon "the records available, the procedures set forth in the Uniform Act appear to have been followed." Majority op., ¶ 76. However, the mandates of the Uniform Criminal Extradition Act demand more than a mere "appearance" of being followed. *See Doran,* 439 U.S. at 288 ("Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution.").

¶ 255. The evidence that the majority so heavily relies on to conclude that an extradition proceeding took place consists of two non-authenticated teletype

102

messages sent from the Chicago Police Department Extradition Unit to the Milwaukee Police Department. The first message, sent on December 15, 2003, purportedly gives notice that the defendant "appeared our ct this date & refused to waive formal extradition" and requested that the Milwaukee Police Department "plz proceed with [its] governors warrant application." The second message, sent March 5, 2004, purportedly advised that the "governors warrant has not yet been received" and that the "fugitive charge must be dismissed" if the warrant is not received within the 90–day period of commitment authorized by sections 16 and 17 of the Uniform Criminal Extradition Act. It is apparently these teletype messages alone that the circuit court relied upon and the majority now uses to find that the defendant in fact appeared in Cook County Court on December 15, 2003, for an extradition proceeding and was thereafter held in custody in connection with the Wisconsin charge for almost a year.

¶ 256. We do have in the record a governor's warrant that Governor Jim Doyle apparently signed on February 6, 2004, to extradite the defendant back to Wisconsin. However, we do not know where the document came from or whether it was ever received in Illinois. The majority concedes as much. Despite recognizing that "the present record does not document the date" on which service of the warrant actually occurred, if at all, the majority nevertheless makes the extraordinary assumption that the warrant was received by Illinois within the 90–day period of commitment because (a) evident by the second teletype message, Illinois was aware on March 5, 2004, that the Wisconsin charge "must be dismissed" if the governor's warrant is not received within the 90–day period of commitment, and (b) Illinois held the defendant based on the Wis-

103

consin charge until October 20, 2004, well after the 90–day period would have expired. Majority op., ¶ 71. The bare record before us simply does not support such an incredible leap of logic. Even the majority cannot explain why Illinois would dismiss the extradition case and release the defendant on October 20, 2004, if in fact the governor's warrant had been received. *See id.,* ¶ 73 ("The record is silent about why, after the governor's warrant issued, the extradition case was dismissed, and the defendant was transferred to the Illinois prison system."). Based upon the majority's assumptive logic, it is just as conceivable that Illinois never actually received the governor's warrant and instead held the defendant on the Illinois charge until he was sentenced on that charge on October 19, 2004. Again, based upon the assumptions that the record forces the court to make, how can the majority conclude that the defendant met his burden of proof?

¶ 257. In any event, at oral argument, the parties agreed that the defendant was transferred to Milwaukee County on June 1, 2005, pursuant to the Interstate Agreement on Detainers Act. *See* Wis. Stat. §§ 976.05, 976.06. The Act "establishes procedures that require cooperation between the 'receiving state' that is requesting the person in custody, and the 'sending state' that currently has custody of the accused." *State v. Townsend,* 2006 WI App 177, ¶ 10, 295 Wis. 2d 844, 722 N.W.2d 753. "A 'detainer' is not executed against a person, nor, standing alone, can it legally authorize custody." *Demars,* 119 Wis. 2d at 24. Because sentence credit requires the defendant be "in custody in connection with the course of conduct for which sentence was imposed," Wis. Stat. § 973.155(1)(a), no sentence credit results from a detainer. When then does the majority conclude that the defendant ceased to be held "in

104

custody" on the Wisconsin charge and instead was held on a "detainer" for which no credit is due?

¶ 258. The confusion caused by the majority opinion may not be limited to interstate situations. Sentence credit issues arise on a daily basis in trial courts all across Wisconsin. Some sentence credit issues can be difficult, but prior to today, it seemed clear that in order to be awarded sentence credit, the defendant needed to be "in custody in connection with" the case for which the defendant was being sentenced. The majority opinion confuses the fact that a defendant may receive credit for time spent in custody before bond or bail is set by the court, but once set, additional sentence credit is determined from that point forward based on whether the defendant was required to stay in custody on bail in connection with the case for which the defendant is being sentenced. For example, it is not atypical for a defendant to be brought to court, in custody, on two or more charges for which bond or bail will be set in two or more cases. Bail or bond is set separately for each case. A cash bail may be set on one case, and a personal recognizance bond may be set in the other case(s). Assuming the defendant cannot post cash bail and therefore remains in custody in that case, sentence credit from that point forward is due in that case. However, at sentencing in the case for which the defendant received a personal recognizance bond, and therefore is not in custody, the defendant is not due sentence credit for the time spent in custody on the cash bail case, even though he or she was initially arrested and brought into court on both cases. Likewise, in this case, even if the defendant was initially brought to court in connection with a Wisconsin charge along with the Illinois charge, that does not mean that the defendant deserves sentence credit against the

Wisconsin sentence for time spent in Illinois custody absent proof that he was held in Illinois custody on that Wisconsin charge.

¶ 259. In conclusion, the defendant has failed to prove that he is entitled to sentence credit on the Wisconsin charge for time spent in Illinois custody. He failed to meet his burden of proving that he was "in custody" "in connection with the course of conduct" for which the Wisconsin sentence was imposed. *See* Wis. Stat. § 973.155(1)(a); *Villalobos,* 196 Wis. 2d at 148. Merely because the defendant may have been arrested in Illinois with law enforcement possessing knowledge that he had an outstanding Wisconsin warrant does not automatically translate into dual sentence credit in Illinois and Wisconsin for nearly a year of time spent in Illinois custody, especially given the lack of proof that he was held in Illinois custody on the Wisconsin charge. The utterly deficient record is devoid of any proof that the defendant was held in Illinois on cash bail stemming from the Wisconsin charge. There are also no court records before us which prove that Illinois filed a fugitive complaint or held an extradition proceeding based upon the Wisconsin warrant. At best, it seems that the defendant was ultimately returned to Wisconsin on a detainer, for which no sentence credit is due.

¶ 260. For the foregoing reasons, I respectfully dissent.